## MASTERS *vs.* THE MADISON COUNTY MUTUAL INSURANCE COMPANY.

A contract entered into between a party insured and another, by which the former agrees to sell and convey to the latter the property insured, at a future day, on the purchaser's paying a part of the purchase money and securing the balance by a bond and mortgage upon the property, is not—in the absence of any evidence showing that the purchaser has complied with the conditions of the agreement, on his part—an *alienation* of the property insured, within the meaning of a section of the charter of the insurance company, declaring that when any property insured with the company shall be *aliened by sale or otherwise,* the policy shall be void.

The term *alienate* has a technical legal meaning; and any transfer of real estate, short of a conveyance of the title, is not an alienation of the estate.

The surveyor and agent of an insurance company, on being applied to, for an insurance upon the plaintiff's mill, went to see the property, and made a survey thereof, the plaintiff not accompanying him, but leaving him to transact the business, and do whatever was necessary. The agent then made out the application, for the plaintiff to sign; using the printed blank furnished to agents for that purpose. He was informed at the time, by the

Masters *v.* Madison County Mutual Insurance Co.

plaintiff's son, that there was a mortgage on the premises, which was a lien thereon. But the application made no mention of any incumbrance: *Held*, that the notice given to the agent, of the prior incumbrance, was sufficient notice to the company; and that the omission to set forth the mortgage in the application, was not a breach of warranty, or a concealment of important matters affecting the risk; notwithstanding the application, by a memorandum in the margin, required the applicant to state whether the property was incumbered, by what, and to what amount, and if not, to say so; and although the by-laws of the company made the person taking the survey the agent of the applicant.

*Held also*, that under these circumstances, the plaintiff could not be prevented from recovering against the company, upon the policy, by the omission to mention, in the application, the fact that there were other buildings standing within ten rods of the property insured, in answer to an interrogatory upon the margin of the application.

The fact that an applicant for an insurance merely mentions the nearest buildings—without professing to do more, or to make any further statement—does not amount to a warranty that there are no other buildings within the given distance of ten rods.

If there are other buildings, it amounts to the withholding of information called for by the interrogatory; and then the question arises whether it is material to the risk. If the risk is not increased by the other buildings, then the withholding of the information is immaterial. This is a question of fact, proper to be submitted to the jury.

Although the by-laws of an insurance company make the person taking a survey in its behalf, the agent of the *applicant*, still he is the agent of the company also, and it is bound by his acts.

THIS action was brought on a policy of insurance, dated the 8th day of June, 1848, by which the defendants insured the plaintiff for five years, against loss or damage by fire, to the amount of $2000, on " her grist mill in the town of Madison, and shed adjoining, and tools and machinery therein." On the 19th day of July, 1850, the property was destroyed by fire. The policy contained the following clause: " And it is also agreed that this policy is made and accepted subject to, and in reference to the terms and conditions of the act of incorporation and by-laws of the said company, which are to be used and resorted to, to explain or ascertain the rights and obligations of the parties hereto, in all cases not herein otherwise provided for." The 7th section of the act of incorporation of said company, enacts as follows: " Where any property insured with

this corporation shall be alienated by sale, or otherwise, the policy shall thereupon be void, and be surrendered to the directors of the said company to be cancelled." The 11th section of the by-laws of the company provides, that "whenever any member of this company shall alienate or sell any house or building insured, he may surrender his policy to the secretary, with a request, signed by him, to have the same cancelled, and the secretary shall enter the same on record as cancelled." On the 15th day of March, 1850, the plaintiff entered into a written article of agreement with one Freedom Hicks, by which she contracted to sell and convey the said mill and mill privilege, and the lands belonging to the same, to the said Hicks, and to give him a good deed of said premises on the first day of September, then next. Hicks, on his part, agreed to pay the plaintiff the sum of $3,250 therefor, of which sum $500 was to be paid on the said first day of September, with interest on the whole sum up to that time, and then to pay the residue of said purchase money in annual installments of $200 each, with annual interest, and to secure such annual payments by a bond and mortgage on said premises.

It was agreed that Hicks should take and have immediate possession of said property, and he agreed to keep the mill insured in some good, safe mutual insurance company, for as large an amount as such company would insure the same. Hicks also agreed, in case he failed to make any of the payments as required by the terms of said agreement, to yield up the possession of said premises to the plaintiff, and to forfeit all rights under said contract. The policy also referred to the application of the plaintiff as follows: "Reference being had to the application of the insured, numbered 3081, for a more particular description, and forming a part of this policy."

The application contained the premium note of the plaintiff for $320, in the usual form, and then proceeded as follows: "Application of Ann Masters, of Hamilton, in the county of Madison, for insurance against fire, by the Madison County Mutual Insurance Company, for the sum of $2000, on her grist mill and shed adjoining, and tools and machinery therein. Rate

Masters *v.* Madison County Mutual Insurance Co.

of premium, 16 per cent, five per cent paid." The application required the plaintiff to state how the mill was "bounded, and the distance from other buildings, if less than ten rods, and for what purpose occupied, and by whom." To this the plaintiff answered as follows : "occupied by a tenant, shed about 20—50 west of mill, small room 12—14 south of mill." Also the application required the plaintiff to state the incumbrances, in the following form : "whether incumbered, by what, and to what amount ; if not, say so." To this no answer was given : it was left a blank in the application. The application was signed by the plaintiff, and witnessed by J. M. Gray, agent, and without date.

It appeared that John Lucas, a former owner of said premises, on the 20th of November, 1840, gave a mortgage thereon to Carlton Rice, for $1500, which was recorded in the clerk's office of Madison county, on the 13th day of December, 1841. That in June, 1848, there was due on this mortgage $300 or $400, and about a year previous to the trial had been paid off in full. It also appeared that the plaintiff held a mortgage given by Carlton Rice, on the 17th day of April, 1848, to her for $9000, on a farm in the town of Lebanon, worth double that amount, one of the conditions of which mortgage was to indemnify the plaintiff against the Lucas mortgage on the mill and premises in question. The mill was shown to be worth from two to three thousand dollars at the time it was burnt, and that the title was in the plaintiff at that time. No question was made as to the giving the requisite notice of the destruction of the property by fire, and furnishing the company with the necessary preliminary proofs thereof. It appeared that Jerome M. Gray filled out the application for the plaintiff for the insurance; that he was the agent for the defendant at that time, and had been for about the period of one year previous thereto. The plaintiff resided in Hamilton, about 6 or 7 miles from the premises in question, and was about 70 years of age. Gray examined the premises before making out the application, and the plaintiff did not go with him. It also appeared that there was a house and barn on said premises, within ten rods of the mill, at

the time the application was made by the plaintiff for her insurance. The house was 135 feet, and the barn 120 feet from the mill. The house stood across the canal from the mill, which was 70 feet wide, and the barn stood down the stream from the mill, on the tow-path of the canal. The agent, Gray, testified that he saw the house and barn when he took the survey of the mill, previous to making out the application, but did not mention them therein, on account of the abundant supply of water there. It appeared that the plaintiff's son was present when the agent made out the application ; that he then told the agent all the particulars about the Lucas mortgage on the premises. This evidence was objected to by the defendants' counsel, and rejected by his honor the, justice before whom the cause was tried, without a jury.

The court ordered a judgment in favor of the plaintiff for the sum of $2,147,86 damages.

*By the Court,* CRIPPEN, J. The first point raised by the defendant is, that the contract for the sale of the premises insured, and the possession and occupation thereof, by the purchaser, was such an *alienation* of the property as rendered the policy void within the meaning of the 7th section of the act incorporating said company.

It is undoubtedly true that the vendee acquired an equitable interest in said premises by his contract of purchase, and might have compelled a specific performance thereof on the part of the plaintiff, by a full compliance on his part. This action was commenced in December, 1850, and there is no evidence in the case showing that the purchaser had complied with his agreement, by making the payment which fell due on the first day of September, 1850, to the plaintiff; or that he had otherwise complied with the conditions of the contract, which he had agreed to perform on that day. The plaintiff on the trial proved her title to the premises, and by the terms of the contract of sale it was expressly agreed by the purchaser that if he failed to make any of the payments, he was to yield up the possession

Masters *v.* Madison County Mutual Insurance Co.

of the premises to the plaintiff, and forfeit all his rights under said contract.

The language of the seventh section of the act of incorporation provides that "When any property insured with this corporation shall be *aliened,* by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors of said company to be cancelled." This is the precise language employed in the 7th section of chapter 41 of the Laws of 1836, entitled an act to incorporate the Jefferson County Mutual Insurance Company. (*Session Laws of* 1836, *p.* 44.) This has been styled and followed as the pattern act for the incorporation of mutual insurance companies, and as it appears, was literally followed in the act incorporating the defendants, and also in another act incorporating the Mutual Insurance Company of the city and county of Albany.

In the case of *Conover* v. *The Mutual Insurance Company of Albany,* (3 *Denio,* 254,) the supreme court held that the alienation spoken of in the statute, was an absolute transfer of the title to the property. This is the language of the court, delivered by Chief Justice Bronson. It was made a point in that case, and thus determined by the whole court. The case did not rest under this decision. It went into the court of appeals, where it was argued, and again decided. One of the judges in that court uses the following language : "The legislature without doubt used the word *alienated* in the ordinary sense which belongs to it," meaning a transfer of the title. The judgment of the supreme court was affirmed by the court of appeals, and for aught appearing in the report of the case, by the unanimous judgment of that court. (1 *Comst.* 290.)

*Bouvier,* in his *Institutes,* (2*d Vol.* § 1992,) says that the legal definition of the term "alienate" is the act by which the *title* to an estate is voluntarily resigned by one person and accepted by another, in the forms prescribed by law. Blackstone says that the most usual method of acquiring *title* to real estate is that of alienation. (2 *Black. Com.* 287.) Alienation is a mode of obtaining an estate by purchase, by which it is yielded up by one person and accepted by another. (*Cruise's Digest, title*

32, *ch.* 1, § 1.) The term *alienate* has a technical legal meaning, and any transfer of real estate, short of a conveyance of the title, is not an alienation of the estate. No matter in what form the sale may be made, unless the title is conveyed to the purchaser, the estate is not alienated.

It can not be pretended that the plaintiff had parted with all her interest in the property insured. The legal title still remained in her, and her interest in the property was to the full amount of its value, or the price for which she had contracted to sell it. The plaintiff most clearly retained an interest in the property, to be protected by her policy. If the assured retain but a partial interest in the property, the policy will protect such interest. (*Ætna Fire Insurance Company* v. *Tyler*, 16 *Wend.* 385.)

I am entirely satisfied that the contract to sell and convey the property to Hicks, was not in the legal, or technical sense of the word an alienation of the estate, within the meaning of the 7th section of the act of incorporation of the defendants, and therefore did not discharge them from liability to the plaintiff. (12 *Ohio Rep.* 305.  10 *Pick. Rep.* 40.  23 *Id.* 418.)

The defendants also insist that they are not liable in this action to the plaintiff, for the reason that she omitted to set forth, in her application for the insurance, that the mill was incumbered by the Lucas mortgage, which was then a lien upon the property; and that she omitted to notify the defendants in writing of the same, in answer to the interrogatory upon the margin of the application, which rendered the policy void, upon the ground that it was a breach of warranty, or a concealment of important matters affecting the risk. The proof establishes that the agent of the company made out the application for the plaintiff to sign. He used the blank furnished to agents for that purpose. It is true that the by-laws of that company make the person taking the survey the agent of the applicant. Nevertheless he is still the agent of the company. He is not divested of his office, by being deemed the agent also of the person making application for a policy. I have always regarded this clause in the by-laws of these companies as a device resorted to by them

Masters *v.* Madison County Mutual Insurance Co.

for the purpose of shunning just responsibility. They employ their own agents and send then abroad in community with their printed blanks, and such instructions as the officers of the company deem proper and necessary to give them. The business of these agents is to obtain insurances for their principals; the company employing them for that purpose. The public know nothing of their by-laws or the instructions under which such agents transact their business. They are regarded as the agents of the company, and confided in, as being competent to transact the business intrusted to them accurately, and according to law.

Gray, the surveyor and agent of the defendants, was applied to for an insurance of the plaintiff's mill. He proceeded to make a survey, and went to the mill, about seven miles from the plaintiff's residence; he then saw the property, its situation, and how bounded, the distance from other buildings, for what purpose occupied, and by whom. The plaintiff did not accompany him. Being an old lady seventy years of age, she relied upon Mr. Gray to transact the business and do whatever was necessary to be done to insure her a valid and binding policy. It appears that Gray was informed by the son of the plaintiff, at the time he made out the application, and while drawing it for the plaintiff to sign, that there was a mortgage on the premises, given by Lucas, and told him all the particulars about it. Notwithstanding such information the agent left the application entirely a blank in relation to any incumbrance upon the property.

Neither the act of incorporation nor the by-laws declare the policy void, for the omission of the applicant to give notice of an incumbrance upon the property. Neither is it required that a written notice of such incumbrance be given. Nothing is said in the policy itself, or in the printed proposals annexed thereto, requiring a notice in writing or otherwise to be given, by the applicant, of a prior mortgage or incumbrance upon the property. In the printed proposals provision is made that when buildings are mortgaged at the time they are insured the mortgagee may have the policy assigned to him, on his signing the premium note, or giving security for the payment of the same,

and obtaining the consent of the company, which assent and assignment shall be entered on said policy. If a notice of the existence of the Lucas mortgage was necessary to be given by the applicant, I have no doubt it was sufficiently given in this case, and legally and properly established on the trial. The proof shows positive notice given to Gray, the agent of the company, and that was sufficient.

His being declared by the by-laws the agent of the applicant, as above remarked, did not divest him of his attributes as an agent of the defendants. He was in the employment of the defendants, soliciting risks, and making contracts for the company with any body and every body who might wish to insure. He also made out the applications, and prepared the necessary papers to effect insurances, and it would, in my opinion, be little less than legalized robbery to allow these insurance companies to escape from liability upon the merest technicality possible, and that too when created by their own by-laws, which remain a sealed book to ninety-nine out of every hundred persons insured. The authorities settle this question against the defendants, and without showing any more valid defense against the plaintiff's claim the judgment can not be disturbed. (*Sexton* v. *Montgomery Co. Mutual Insurance Co.* 9 *Barb. S. C. Rep.* 181. *McEwen* v. *The Same*, 5 *Hill*, 101. 3 *Denio*, 254.)

The defendants further insist that the plaintiff can not legally recover in this action, on the ground that the application omitted to mention that the house and barn were standing within ten rods of the mill, in answer to the interrogatory upon the margin of the application; insisting that it was a breach of warranty, or a concealment of material facts affecting the risk.

Within the principle, as laid down in *Chitty on Contracts, p.* 452, and the cases there cited; also the case of *Gates* v. *The Defendants in this action*, (3 *Barb. S. C. Rep.* 73,) and the same case decided in the court of appeals, (2 *Comst.* 43,) it seems to be a well settled rule, that the applicant for an insurance merely stating the nearest buildings, without professing to do more, or to make any further statement, it does not amount to a warranty that there are no other buildings within the given dis-

Masters *v.* Madison County Mutual Insurance Co.

tance of ten rods. If there are other buildings, it amounts to the withholding of information which was called for by the interrogatory, and then the important question arises, whether it was material to the risk. If it did not increase the risk of the defendants, then the information withheld was immaterial. This was a question of fact, proper to have been submitted to a jury, if the cause had been tried before a jury. The waiver of a trial by jury, and consenting to a trial by the court, must be governed by the same principles and rules of law as are applicable to a trial by jury. Unless the finding of the court is wholly without evidence to support it, or clearly and palpably against the weight of evidence, a new trial should not be granted. It can not be necessary to recapitulate the evidence upon this point. The location of the house and barn was such that Gray the agent did not deem it important or necessary to refer to either in filling out the application. The house was nearly nine rods from the mill, and on the opposite side of a canal 70 feet wide—a small low building—and the barn, nearly eight rods from the mill, standing upon the tow path of the canal, and also a small low building, afforded a very good reason for coming to the conclusion that the risk of the defendants was not increased by the existence of these buildings. Not a particle of testimony is to be found in the case, on which to base a contrary conclusion. Although the mill was destroyed by fire in the month of July, in a dry season of the year, still the house and barn in question were not hurt or injured thereby. This fact, to say the least of it, is some evidence that the risk of the mill was not increased by the existence of the house and barn.

The opinion of the court of appeals in the case of *Gates* v. *The Madison Co. Mutual Ins. Company*, (2 *Comst.* 43,) seems to be decisive upon this question. Judge Jones delivered the opinion in that case, which was unanimously concurred in by the whole court, and as far as it applies to the case now under consideration, must be regarded as the law of the case. The case in Comstock, as well as the present one, is clearly distinguishable from the cases relied upon by the defendants' counsel,

in the 5th of Hill, 188; 7 Id. 122; 2 Denio, 72, and the other cases to which the court were referred upon this point.

The witness, Gray, testified that the reason why he did not mention the house and barn in the application was, the abundant supply of water there. The defendants' counsel objected to this testimony, but without stating any ground of objection. Whether such objection was made because the question to which it was an answer was leading, or upon some other ground, the bill of exceptions does not show. I am inclined to the opinion that the testimony was legal, as tending to prove that the risk of the defendants was not increased by the house and barn. At all events if the proof was not strictly legal it affords no ground for the granting a new trial in this action. The defendants' counsel should have stated the grounds of objection, in order to make it available on this motion.

My conclusion upon the whole case is, that the judgment should be affirmed, with costs.

Judgment affirmed.

[DELAWARE GENERAL TERM, July 13, 1852. *Mason, Shankland, Crippen* and *Gray*, Justices.]