ROTER (ROBERTS v.). See Case No. 11, 912.

## Case No. 12,084.

### ROTH v. CITY INS. CO.

[6 McLean, 324.] [1]

Circuit Court, D. Ohio. April Term, 1855.

INSURANCE—FIRE—SURVEY OF PROPERTY—REPRESENTATIONS—GOOD FAITH.

1. Where an agent of an insurance company makes the survey and the representation of the property to be insured, being as well acquainted with the situation of the property as the assured, any misrepresentation does not avoid the policy.

[Cited in brief in AEtna Live-Stock, Fire & Tornado Ins. Co. v. Olmstead, 21 Mich. 249; Annapolis & E. R. Co. v. President, etc., of the Baltimore Fire Ins. Co., 32 Md. 39; Mullin v. Vermont Mut. Fire Ins. Co., 58 Vt. 124. Cited in Waterbury v. Dakota Fire & Marine Ins. Co., 6 Dak. 471, 43 N. W. 701.]

2. When the survey and representation of the premises are filled up on the representation of the assured, the agent having no knowledge of the premises, the policy is void, if any fact upon the risk be omitted or misrepresented.

3. Like all other contracts, the contract of insurance must be made in good faith.

4. Where the form of the instructions required the assured to apply to an agent of the company, if there be an agent in his district; and if the assured shall undertake to make the survey and representation himself, he shall be held strictly to conform to the requirements to make a valid policy, would seem to imply that if the agent be called to make the survey and representation and acts, the assured is not bound for the accuracy of the representations.

[Cited in Howard Fire & Marine Ins. Co. v. Cornick, 24 Ill. 462; Simmons v. West Virginia Ins. Co., 8 W. Va. 494–496.]

5. There are many facts on which a jury should pass, in regard to the risk, &c.

[This was an action at law by Frederick Roth against the City Insurance Company to recover damages for the nonperformance of an insurance policy.]

Mr. Walker, for plaintiff.
Mr. Swayne, for defendant.

[1] [Reported by Hon. John McLean, Circuit Justice.]

OPINION OF THE COURT. This is an action on a policy of insurance, which bears date the 5th of May, 1852, of two thousand dollars, for one year, on a brick dwelling house in Nashville, in the state of Tennessee. The damages claimed fall short of the amount insured. The declaration was in the usual form, in answer to which the defendant filed the general issue and several special pleas. To some of the pleas demurrers were filed, and to others issue was joined. But the parties waived the questions raised by the pleadings, except in regard to concealment and misrepresentation of the premises, on the application for insurance, and submitted the case on the questions of law.

The policy contained the following clause: "This policy is made and accepted in reference to the proposals and conditions hereunto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." The conditions referred to are, "All applications for insurance must be made to the secretary, and the subject offered for insurance accurately described." "If the property offered for insurance is within the district of a surveyor of this company, he will examine and report thereon, unless the party applying shall elect to make his own survey, in which case such survey shall be made according to the printed form of instructions issued from the office of this company, and the party furnishing such survey shall be responsible for the accuracy thereof; but if the property offered for insurance is not within the district of a surveyor, then the applicant must himself furnish an accurate and just description thereof, viz., the dimensions of each building; of what materials constructed; the internal division and arrangement thereof; how warmed, (and where stoves are used, how in particular the pipes are conducted,) how occupied, whether as private dwellings, or how otherwise; the name of the present occupant or occupants; how situated in respect to contiguous buildings; the occupation of such contiguous buildings, and the materials with which they are constructed," &c. "If any person insuring any building or goods in this office shall make any misrepresentation or concealment; or if after the expiration of a policy of insurance, and before renewal thereof, the risk of the building shall be increased by any means whatsoever; or if, after insurance effected, either by the original policy or by renewal thereof, the risk shall be increased by any means whatever, within the control of the assured; or if such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring or renewal, such insurance shall be void and of no effect."

The application for insurance represented the building to be insured as brick, situated on the north side of Lower Water street, in

the city of Nashville, Tennessee, occupied as a dwelling house by the assured, worth from two thousand eight hundred to three thousand dollars, "and that buildings were on each side of the dwelling house assured, from sixty to seventy feet." The parties agree that the steam saw-mill is between fifty-four and fifty-five feet from the dwelling-house insured, by actual measurement; and it appears that the house took fire by the sparks from the saw-mill, which was burnt down. Mr. Warne, who is agent for the company, and took the insurance, being sworn, states that Roth, having an insurance on his house in one of the Nashville offices, which was about to expire, said to witness, that as some of his friends had insured in the Cincinnati Insurance Office, he was desirous of having his house insured by it; and the deponent states that he was well acquainted with Roth's property, being his family physician; the blank survey was filled out by the witness, and after being read to the plaintiff was signed by him, and witness forwarded it to the Cincinnati office and received the policy. The witness was well acquainted with the locality of the buildings. When the question was asked of Mr. Roth, how far his dwelling was from the saw-mill, his answer was, "I suppose some forty or fifty feet." The distance was not measured by the witness, but was put down in the survey "about fifty feet." He says Mr. Roth is a German, and speaks the English language so as scarcely to be understood. Witness believed himself the distance to be about fifty feet. As witness was so well acquainted with the property, Roth could not have misrepresented its situation. The injury to the insured was fully two thousand dollars. On the 10th of September, 1852, the secretary of the insurance company wrote to the agent: "We are in receipt of Mr. Roth's proof of loss, and we regret to say it corroborates the report that came to us, that the steam saw-mill was nearer the dwelling than is set forth in Mr. Roth's survey, on which the policy was issued. Besides the erroneous statement of the distance, we find that the survey is silent as to the nature of the occupancy of the contiguous buildings. By his silence we were led to suppose such buildings were not of an extra hazardous occupation; had the survey been explicit on that point, we should, without hesitation, have declined the risk; and we have thus been led into the issuing of the policy, under an erroneous representation of the hazard."

There being no controversy about the facts, the cause is submitted to the court on the above statement.

In the argument the plaintiff denies the concealment and misrepresentation which are set up in the defense, and insists that the survey having been made by the agent of the company, who was well acquainted with the locality of the premises, being the family physician of the plaintiff, the plaintiff is not chargeable in law with any misrepresentations or concealments in the description of the premises. That the distance was not measured between the house insured and the nearest houses on both sides, but it was assumed in the survey as about fifty feet. These are the words of the agent in his deposition; but in the survey the distance is stated to be "sixty to seventy feet." The memory of the witness is inaccurate in this respect. And as the parties agree that the measured distance is a little short of fifty-five feet between the saw-mill and the dwelling-house, there was a misrepresentation in this respect of five feet. This is the misrepresentation on which the defendant relies. The concealment charged consists in not responding to two enquiries in the printed form of the survey, whether the nearest buildings are frame or brick, and how they are occupied. A note, in the form of the survey furnished, states, if the nearest building is wood, no answers need be given to the interrogatories respecting the walls, sub-divisions, roof and gutters, and that the description may be given in writing, or by a diagram. And the question is, whether the inaccuracy of distance, and the omission to describe the steam saw-mill, which was the nearest building, are fatal to the rights of the plaintiff. A steam saw-mill is alleged to be more combustible than an ordinary wooden building, and that, consequently, the risk was increased, and therefore it was the more important that it should be accurately described.

The main enquiry, as to the liability of the company is, whether the survey, having been made out by its agent, relieves the plaintiff from the objections made. There could not in fact have been any inaccuracy as to distance, in the statement of the plaintiff, for the agent of the company says in his deposition, in answer to his enquiry as to the distance the plaintiff replied, forty or fifty feet. Nor can he in fact be said to have concealed anything, as, being an ignorant man, and slightly acquainted with the English language, he relied upon the agent to make out the description. But notwithstanding this, if Warne was legally the agent of Roth in making out the description, and not the agent of the company, the plaintiff must be held responsible for the inaccuracy and concealment charged. The plaintiff contends, if there had been no agent present and consenting to the whole negotiation, that the facts concealed or misrepresented, were not such as to avoid the policy. That to work this result, it must be a fact which the company, not having the means of knowing, cannot be presumed to know; or a fact material to the risk, and which, if known, would have prevented the officer from taking the risk, or at least from taking it at the premium charged. The difference of ten or five feet in the distance, the counsel argues, can be of no importance. This may be so, but can it be disregarded when the policy has made the statement of

the distance a condition? The policy uses the word "contiguous" in reference to the distances to be described. The word imports contact, or adjoining; but this cannot be the sense in which it was used in the policy. Whether the saw-mill increased the risk, would seem to be a matter of fact for a jury, and with propriety the effect of the inaccuracy of distance might also properly be enquired into by a jury.

On reference to the authorities there will be found much conflict on the questions raised. The general principles in regard to misrepresentation and concealment, are found in the elementary works. 1 Phil. Ins. 80; Duer, 281–400, and in Carter v. Boehm, 3 Burrows, 1909. These go upon the ground that the contract is made on the good faith of the representation by the insured, to whom all the facts are known, and which he is bound to state. Any concealment of the facts important to the risk, or misrepresentation of them, so as to mislead the underwriters, is fatal to the policy. For any failure in this respect, neither the ignorance nor inadvertence of the party can afford an excuse. In Curry v. Commonwealth Ins. Co., 10 Pick. 535, the assured had been threatened by a person who had been arrested by the plaintiff, that he would burn his house when released, which was concealed by the plaintiff, perhaps, because he considered it an idle threat; yet the court instructed the jury, if they considered the threat material to the risk, and would have influenced the underwriters, it was a matter for the jury. In Fowler v. Aetna Fire Ins. Co., 6 Cow. 673, where the plaintiff represented his two story frame house was filled in with brick, which was not true, it was held to be fatal to a recovery. When a description is false and not included in the policy, it must be material to the risk, or it will not vitiate the policy. Delonguemore v. Tradesmen's Ins. Co., 2 Hall, 629. It is a general rule, to make a representation a warranty, it must be a part of the policy. Where the written application was a part of the policy, and the conditions required a description of buildings within ten rods of the house insured, any misdescription should avoid the policy. The building insured was a grist-mill, having space on all sides, no mention being made of a barn within six rods, nor of the fact that there was a turning lathe and carpenter's bench and tools kept and used in the building; although these facts were spoken of at the time of insurance; held that these omissions were fatal to the policy. Jennings v. Chenango Co. Mut. Ins. Co., 2 Denio, 75. Lord Mansfield held that there is a material distinction between a representation and a warranty. A representation may be equitably and substantially answered; but a warranty must be strictly complied with. In De Hahn v. Hartley, 1 Term R. 343, it is said in 1 W. Bl. 427, and in 3 Burrows. 1419, that a false warranty will vitiate the policy, though the loss happens in a mode not affect-

ed by the falsity. In Masters v. Madison Co. Mut. Ins. Co., 11 Barb. 624, it was held that the surveyor and agent of an insurance company, on being applied to for an insurance upon the plaintiff's mill, went to see the property, and made survey thereof, the plaintiff not accompanying him, but leaving him to transact the business and to do whatever was necessary. The agent then made out the application for the plaintiff to sign, using the printed blank furnished to agents for that purpose. He was informed at the time by the plaintiff's son that there was a mortgage on the premises, which was a lien thereon. But the application made no mention of any incumbrance. Held that the notice given to the agent, of the prior incumbrance, was sufficient notice to the company; and that the omission to set forth the mortgage in the application, was not a breach of warranty, or a concealment of importance affecting the risk; notwithstanding the application, by a memorandum in the margin, required the applicant to state whether the property was incumbered, by what and to what amount, and if not, to say so, and although the by-laws of the company made the person taking the survey the agent of the applicant. Held also: "That under these circumstances, the plaintiff could not be preverted from recovering against the company, upon the policy, by the omission to mention in the application, the fact that there were other buildings standing within ten rods of the property insured, in answer to an interrogatory upon the margin of the application." Id. "The fact that an applicant for an insurance merely mentions the nearest buildings. without professing to do more, or to make any further statement, does not amount to a warranty that there are no other buildings within the given distance of ten rods." Id. "If there are other buildings, it amounts to the withholding of information called for by the interrogatory; and then the question arises, whether it is material to the risk. If the risk is not increased by the other buildings, then the withholding of the information is immaterial. This is a question of fact, proper to be submitted to the jury." Id. "Although the by-laws of an insurance company make the person taking a survey in its behalf, the agent of the applicant, still he is the agent of the company also, and it is bound by his acts." Id.

On the part of the defendant it is contended that the plaintiff having signed the survey, he is bound by the conditions of the policy. That the agent who filled up the blank survey acted in doing so, as the agent of the plaintiff and not as the agent of the company. That the policy was declared to be made on conditions annexed to it; and this would be the effect of the policy if the survey had not been made. The conditions in this policy, it is argued, are a warranty. They stipulate (1) that what is stated by the plaintiff is true; (2) that any misrepresentation and concealment shall avoid the policy.

These, it is alleged, are the conditions of the policy, and if not fulfilled, no liability on the part of the company attaches.

In Sexton v. Montgomery Co. Mut. Ins. Co., 9 Barb. 191, it was held: "Where, by the conditions annexed to a policy it is provided that, 'in all cases the insured will be bound by the application, for the purpose of taking which the surveyor will be deemed the agent of the applicant as well as of the company,' the surveyor is the agent of the applicant, and the applicant will be affected by any omission of such agent in describing the property insured." "Where, in the application to an insurance company for insurance on personal property, which application was annexed to the policy issued and was referred to therein, and made a part thereof, opposite to the usual printed inquiries, 'where situated, of what materials and size of building, &c., and relative situation as to other buildings, distance from each if less than ten rods,' &c., was written a description of several buildings standing within ten rods of the one in which the goods insured were; but several other buildings within that distance were not mentioned. Held that had this been an insurance upon buildings, the statement in the application as to the distance from other buildings, would have been a warranty." Id. "Where it is one of the conditions of a policy of insurance that, in case of any misrepresentation or concealment on the part of the assured, the insurance shall be void; in an action upon such policy, the defendant's concealment of a material fact, the question of concealment and its materiality should be submitted to the jury." Id.

In Kennedy v. St. Lawrence Co. Mut. Ins. Co., 10 Barb. 285, where a policy of insurance against fire, referred to the application of the insured thus: "Reference being had to the application, &c., for a more particular description, as forming a part of this policy," held that the application formed a part of the contract, and was a warranty. Where the insured was required to state in his application the number of buildings within ten rods of that in which the goods insured were deposited, and he omitted to state all the buildings within that distance, held that the warranty was broken, and that the insured could not recover. Id. This rule applies as well to a policy of insurance on goods deposited in a store, as to a policy on the building itself. Id. "If there be in the policy a warranty with respect to the number of buildings within ten rods, and the warranty be broken, the fact that the agents of the insurers drew the application, and knew of the existence of the buildings omitted, is immaterial." Id.

Jennings v. Chenango Co. Mut. Ins. Co., 2 Denio, 75. Conditions of insurance annexed to a fire policy, and the written application of the assured, when referred to in the policy, as forming part of it, are parcels of the contract, and have the same effect as if written in the body of it. Statements, in the application, when it made a part of the policy, of the purpose for which the insured building is to be occupied, and of its situation as to other buildings, are warranties, and if untrue, the policy is void, though the variance be not material to the risk. Id. And parol evidence that the assured truly informed the agent of the insurer, who prepared the application, as to these particulars, is not admissible. Id. Where the conditions which were made a part of the policy declared that all applications for insurance must be made in writing, and must state the relative situation of the property as to other buildings, and the distance from each, if less than ten rods, and the printed application was so filled up as not to show the distance of other buildings from the insured property, though there was one within ten rods, held that the insured cannot recover. So where the conditions required the application to state for what purpose the insured property was occupied, and in the application it was only called a gristmill, and it was proved that carpenter's work was accustomed to be done in it, with instruments and fixtures which were kept there, held that the policy was void. Id.

Wall v. Howard Ins. Co., 14 Barb. 383. 'A representation, to be a warranty, must be contained in the policy, or by reference in the policy must be made a part of it. A warranty must be strictly complied with, even where it does not seem to affect the risk. Id. But a misrepresentation in a matter that does not affect the risk or the amount of the premium, will not avoid the policy unless made with a fraudulent design. Id. ' A misrepresentation whereby a less premium is paid than would be payable if a true statement had been made, even without a fraudulent intent, would, upon common principles of insurance, be sufficient to render the policy void. Fitzherbert v. Mather, 1 Term R. 12.

These cases are cited as they seem to have a direct bearing on the case before the court. But it must be observed that they are not altogether consistent with each other. In some of them it is held that where the representation is made a warranty by being inserted in the policy, or by reference made a part of the contract, any misrepresentation, though not affecting the risk, avoids the policy, whilst in others the policy is held to be avoided, if the misrepresentation has a bearing on the risk. Now, I cannot see why the misrepresentation of a fact, which was in no way material to the risk, and, consequently, could have had no effect to increase the premium, if known, can be held to make the policy void. The contract of insurance, like all other contracts, requires good faith in the parties; and it is said that in these cases, the assurer generally relies on the assured, who has full knowledge of the locality of the property, and the company is not presumed to have such knowledge, every fact bearing up-

on the risk should be truly stated. And if this be not done, whether the omission be chargeable to fraud, negligence or inadvertence, is immaterial, as the effect on the insurers is the same; the policy is avoided. But it may be said, can there be no distinction between that which is included in the contract, and that which is outside of it. Such an enquiry may lead technical minds to make a distinction, where none in fact exists. That which the contract includes is held to be a warranty, and that which is outside of the contract is considered to be a mere representation. Now, if there is a misdescription in the latter, which misleads the assurer, the policy is void; and from this it seems to have been inferred that where there is a warranty, the misrepresentation of any fact which does not and cannot mislead the assurer, because it has no relation to the risk, yet it shall vitiate the policy. And this we are told is the distinction between a simple representation, and one which is made a part of the policy. The former is said to be a proposition for a contract, the latter a part of it. The former, if fraudulent, avoids the contract; the latter, if untrue, is a breach of the contract. It is admitted that a warranty, as stated by Ellis on Insurance, may be considered a condition precedent to the contract, and consequently requires a strict construction and performance, before the assurer can be held responsible. But it is said by the supreme court in a late case: "There is no more reason for claiming a strict literal compliance with the terms of a policy than in ordinary contracts. Full legal effect should always be given to it, for the purpose of guarding the company against fraud or imposition; beyond this we would be sacrificing substance to form, following words rather than ideas." Lord Eldon, in the house of lords, in New Castle Fire Ins. Co. v. Macmorran, 3 Dow. 255, took a sensible view in saying: "The insurance was made with the New Castle Fire Insurance Company, and the mill was burnt; and in an action against the insurers the question was, whether the mill, which was warranted as in the first class of risks, was not truly of the second class. It turned out to be in the second class, and it was held that an action on such a policy could not be sustained, Lord Eldon observing, whether the misrepresentation was in a material point or not, or whether the risk was equally great in the one class as in the other, were questions which had nothing to do with the case; the only question being, Is this de facto the building which I have insured?" But in this case it was held or considered, that in a case of warranty, it would be a good answer that the mistake or misrepresentation was to be attributed solely to the insurers or their agent. The materiality of a representation or an omission is a matter for the jury. Grant v. Howard Fire Ins. Co., 5 Hill (N. Y.) 10; McLarahan v. Universal Ins. Co., 1 Pet. [26 U. S.] 188. Lord Mansfield says: "Good faith forbids either party, by concealing what he privately knows, to draw the other into a bargain, from his ignorance of that fact, and his believing the contrary. But either party may be innocently silent as to grounds open to both, to exercise their judgments upon." And again: "There are many matters as to which the insured may be innocently silent. He need not mention what the underwriter knows." And again: "The reason of the rule against concealments, is to prevent fraud and encourage good faith." In Satterthwaite v. Mutual Ben. Ins. Ass'n, 2 Harris [14 Pa. St.] 393, the supreme court of Pennsylvania says: "Where the constitution and by-laws of a mutual fire insurance company do not require from an applicant for insurance, a statement as to the condition of the property designed to be insured; but where the by-laws provide for a survey at the instance of the company, the policy is not void by reason of omission on the part of the assured to state a fact material to the risk, where no enquiry is made on the subject."

There is another point to be considered, and that is, what effect is to be given to the fact, that the survey was made by the agent of the company, who, from the evidence, was as well acquainted with the building insured and the adjacent buildings as was the insured. He filled up the blanks in the form furnished by the defendant, which was signed by the plaintiff. If this be considered as the representation of the plaintiff, unaffected by the agent of defendants, there is an end of this controversy. And I admit that the greater number of decisions on this point are against the plaintiff. They treat Mr. Warne, in making the survey, as the agent of the plaintiff. And although this point was pressed in the argument with great cogency, I was not convinced that it was reasonable or just. It is, undoubtedly, the rule of decision in New York, and also in Massachusetts. And he who takes a ground, on a question of insurance, in opposition to a rule well established in these two great commercial states, may be considered as hazarding something, if he has anything to hazard. But if I am wrong, the parties will not be injured, and I myself may be put right by my brethren at Washington. I do not take ground that, in all cases, where the survey is made out by the agent of the assurer, the assured is not answerable for the representation. But if such agent actually makes the survey, being as well acquainted with the locality of the premises as the assured is, and when he takes the whole authority of making the representation on a view of the premises, I must think, until overruled, that the assured is not responsible either for concealment or misrepresentation. But where the representation is made out under the direction of the insured, or without a view of the premises by the agent, it would be just to hold the insured responsible. The employ-

ment of the agent, and the circumstances under which the survey was made, are matters for the jury, as well as some other matters before noticed.

In the case cited from 11 Barb., where the agent made the survey, the direction of the insurer was not complied with, by stating there was a mortgage on the premises, yet as the son of the insured stated the fact to the agent, it was held sufficient. This was under the general rule that a notice to the agent was notice to the principal. Under the by-law of the company, it was declared that their agent, in making the survey, acted as the agent of the insured. In the above case the supreme court of New York say, the agent is in the employment of the company, soliciting risks and making contracts for the company with every body who might wish to insure; and he also makes out the application, and prepares the necessary papers to effect insurances, and hence the court were of opinion that it would be little better than legalized robbery to allow those insurance companies to escape from liability upon the merest technicality possible, and that too when created by its own by-laws. But whether such agent is declared to be the agent of the assured when he makes the survey, cannot be material. He is known to be the agent of the company, and it is expected of him that he will assist the uninstructed in making their applications, for which purpose he is furnished by the company with the necessary blanks to be filled up under his direction. His connection with the company, and the interest he is expected to excite in its behalf, recommend him to those who desire to be insured, and they rely upon his fairness and intelligence. And if, under such circumstances, he should intentionally or unintentionally make any concealment or misrepresentation in the application, acting upon his own survey, and having an intimate knowledge of the premises insured, the company should not be permitted to defeat a recovery on such ground. No hardship is imposed on the company, if it be presumed to have the notice of the agent who made the survey. Ordinary prudence would suggest the propriety of giving such instructions on this point, as should secure full information, at least in all cases where the survey is made by the agent.

From the language of the conditions made a part of this policy, an inference may be drawn that, where an agent of the company is called on to make the application, the insured incurs no responsibility. The words are: "If the property offered for insurance is within the district of a surveyor of the company, he will examine and report thereon, unless the party applying shall elect to make his own survey, in which case such survey shall be made according to the printed form of instructions issued from the office of the company, and the party furnishing such survey, shall be responsible for the accuracy thereof." Now if the party shall elect to make his own survey, he may make it, though the property to be insured is within the district of a surveyor of the company, yet in such case of election, he makes the survey under the responsibility stated. But if the agent of the company examine and report thereon, he is authorized to do so, which, it would seem, relieves the party from the responsibility of making his own report, and for the accuracy of which he is held responsible.

In the case of Bruner v. Howard Fire Ins. Co., 2 Am. Law Reg. 510, held by the supreme court of Pennsylvania it was competent to show that the description of property insured, annexed to a policy, though signed by the insured, was drawn up by the agents of the insurer, and that they knew all about the property from the verbal description by the insured and from actual survey, and therefore that the omissions and misrepresentations were chargeable to the agents of the assured. In the case of the Hartford Protection Ins. Co. v. Harmer, 2 Ohio St. 452, an interesting and well considered case, sustains, as I think, sound doctrines on the law of insurance.

A jury may be called at the convenience of the counsel, and exceptions can be taken, so as to present to the supreme court the points ruled.

---

ROTH (DARST v.). See Case No. 3,582.

ROTHWELL (HAYMAN'S ADM'RS v.). See Case No. 6,267.

ROUDENBUSH (UNITED STATES v.). See Case No. 16,198.

ROULSTONE (CURRY v.). See Case No. 3,497.