## The Peoria Marine and Fire Insurance Co v. Reuben S. Hall.

*Insurance ¶ by one part owner.* — If one partner insure the partnership property against loss by fire in his own name only, and it does not appear that the insurance was really intended for the benefit of the firm, the premium paid from the partnership funds, and the transaction subsequently ratified by the other partner, the policy will cover only the undivided interest of the partner insuring.

PEORIA MARINE AND FIRE INSURANCE CO. v. HALL.

It makes no difference in this respect that the agent of the insurer knew the interest of the parties, and that it was the intention of both the insurer and insured, at the time of issuing the policy, that the insurance should cover the whole.

The rule may be otherwise where the partner making the insurance has made advances to the firm, which, by agreement, are to constitute a lien on the goods insured.

Where a policy when made covers the interest of one partner only, the remaining interest can not be brought within it by the partner insured subsequently becoming the owner of the whole.

*Conditions in fire policy: limitation of action.*—By one of the conditions attached to a fire policy it was provided that no suit should be brought upon it unless within twelve months next after the loss; and in case any suit should be commenced after the expiration of twelve months, the lapse of time should be deemed and taken as conclusive evidence against the validity of the claim. It was held that if such a condition was valid at all, it was valid as a *contract only*, and that the limitation fixed by it must, upon the principles governing contracts, be more flexible in its nature than one fixed by statute, and liable to be defeated or extended by any act of the insurer which prevents action being brought within the prescribed period.

Held further, that the insured had the whole of the twelve months within which to commence suit, and that the limitation must rest upon the tacit condition, without which it could not be valid, that the insurer should be accessible to the service of process by which suit may be commenced against him, if not for the whole period, at least for a sufficient time immediately preceding its close to enable the insured to commence his suit in the ordinary legal mode.

And process having been issued before the expiration of the twelve months, returnable two days after their expiration, and no agent of the insurer — a foreign corporation — being found in the county, upon whom to make service, and new process being issued on the return of the first, it was held that the failure to commence suit within twelve months' was sufficiently excused, and the second suit, under the circumstances, was brought in season.

*Conditions in policy: keeping of gunpowder: waiver.*—Where by a fire policy it was provided that the keeping of gunpowder "without written permission in the policy" should render the policy void, it was held that if the agent taking insurance on a stock of goods knew that gunpowder was kept and to be kept, the keeping it would not render the policy void, whether permission to keep it was indorsed or intended or neglected to be indorsed or not.

Notice of this fact to the agent was notice to the principal, and by taking the premium and issuing the policy, the insurer must be regarded as having waived the condition which prohibited gunpowder being kept.

*Heard November 5th, 1863. Decided January 8th.*

Error to Washtenaw Circuit, to which the case had been transferred from Jackson. All the material facts appear in the opinion.

*Livermore & Wood,* and *Johnson & Higby* for plaintiffs in error:

1. This suit was commenced by the last writ. There is nothing showing it to have any connection with the former writ, except the words " Alias Summons," indorsed on the seal of the writ; but we submit that does not make it a continuous writ.

As to the validity of the limitation of right of action by the insured. See 2 *Phil. on Ins.* § 2171; 1 *Blatch.* 280; 25 *Ill.* 446; 3 *Hill,* 161; 9 *Ind.* 448; 20 *Vt.* 230; 27 *Vt.* 101; 31 *Penn.* 449; 24 *Geo.* 101; 6 *Ohio,* 602; 6 *Gray,* 606, 180; *Broom's Legal Maxims,* 539.

2. The second question to be submitted in this case, is whether, if the agent, King, knew at the time of effecting the policy, that the property insured belonged to the plaintiff and Bennett, the policy would be valid for the whole stock insured.

The third question is, whether the court erred in charging that, if the plaintiff informed the agent that he kept gunpowder in his store for sale, and the agent intended to insure against keeping it but neglected to indorse the permission on the back of the policy, such neglect would not make the policy invalid.

We propose to discuss these questions under one head, as they involve substantially the same principle in law, viz: whether the written terms of the policies, and consequently the liabilities and obligations of the parties, can be changed by any parol agreement or understanding between the agent and insured.

The phraseology of this last charge is peculiar, and is really inapplicable to the evidence in the case; for the evidence is that the plaintiff informed the agent that he kept gunpowder for sale, and the agent denies it. Yet the Court charged the jury, that if the plaintiff informed

the agent that he kept gunpowder, &c., and the agent intended to insure against it, the policy is not invalid. There is no evidence the parties intended to make any other or different agreement than the one reduced to writing; but the jury have found that the parties did intend to make a different agreement, and the question is, which is to prevail, the written agreement or the agreement which the jury say the parties intended to make, founded upon the evidence of the conversation of the parties at the time this written agreement was executed and delivered.

We need not cite authorities to show that parol evidence is not admissible to vary, explain or contradict an agreement in writing; as, in the language of the books, "It is not admissible to give evidence of a parol agreement prior to, or contemporary with a written instrument, and which varies its terms:"— 23 *N. Y.* 516.

So that if we have properly stated this question, the charge was certainly erroneous. · For the express provision of the policies is, that the keeping of gunpowder for sale, or on storage, without the authority in writing, shall render them void.

But we think this charge is erroneous for another reason, viz: we think the conditions annexed to policies are limitations on the power of agents; and these limitations were known to the assured, and therefore he has no cause of complaint. He knew from both of these contracts in his possession, that they were forfeited by keeping gunpowder.

And he knew, or was bound to know, any parol agreement contrary to the terms of his policies was of no account.

There is this difference in the last two questions: In reference to the ownership of the property, it was represented in the application of the plaintiff as his property. It was insured as his property, and the facts contained in

the applications are declared to be warranties by the express terms of the policy; and such is the law, without these express stipulations, if referred to in the policy: — *Ang. on Ins.* §141, *and note 2.* And unless these facts are literally true, the policy is void.

*O. Hawkins,* for defendant in error, argued that the second summons was to be regarded as an alias. Also, that the stipulation contained in the policy limiting the time to one year after the loss, in which suits may be brought for losses sustained, is against public policy and void: — 5 *Ind.* 23; 2 *Ind.* 102; 9 *Ind.* 448; 4 *Ind.* 239; 5 *McLean,* 461.

The stipulation is a mere attempt to bar a right of action before the right accrues. It is a release to operate upon the happening of an event yet to occur, and which may or may not take place; and to make a release good it must operate on an *existing claim, a present right.*

The time specified in the statute of limitations is as much a part of the policy of the law as the act itself, and it is a matter of law and can not be changed by the contract of the parties: — 5 *McLean,* 465.

Another error alleged, is, that the Circuit Judge charged the jury, that if the agent, King, at the time of making the policy on the goods, knew the interest of the parties, that they were jointly owned by Hall & Bennett, and insured the whole stock, the policy would be valid for the whole stock insured. The Court was clearly right.

It was in proof that Hall stated to King he did not think he had the right to insure Bennett's share. King replied it would make no difference, that Hall had the right to insure for the whole amount.

It would be a fraud to permit them to take advantage of their own acts to defeat the plaintiff's recovery, and the law will not permit it. The insurance company having

received the premium, and adopted the acts of their agent, they must abide by them.

It makes no difference whether Hall's interest was much or little, only to show that Hall practiced no fraud by representing he was the owner of the goods when he was not.   That his interest was sufficient to entitle him to recover will appear from the following cases: — *Ang. on Ins.* §§ 55, 79; 1 *Hall,* 84; 6 *Cush.* 7.

It was left to the jury to determine, from the evidence, whether the agent, King, intended to insure the whole stock against fire, and including gunpowder; and the jury found he did, though he omitted to make the indorsement on the policy.

The failure to indorse it on the policy was not the fault of the plaintiff, and the company can not take advantage of it: — 1 *Bosw.* 522.

CHRISTIANCY J:

This was a suit brought by Hall against the company, upon two policies of insurance against loss by fire; one upon a stock of goods in plaintiff's store in the village of Hamburg, Livingston county, Michigan, to the amount of two thousand dollars, dated January 13th, 1860; and the other for a like amount in the aggregate, upon plaintiff's dwelling house, furniture, clothing, barn and shed, hay and grain, and on his store (building) there situate, the amount insured upon each item being specified; that upon the store building being one hundred and fifty dollars.   This policy is dated August 9th, 1859.

The policies on their face are declared to be "made and accepted in reference to the conditions thereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties in all cases not therein otherwise specially provided for."   By the eighth condition annexed, it is declared (among other things) that "the keeping of gunpowder or fireworks, for sale or on

storage, upon or in the premises hereby insured, or in any building containing property insured by or under this policy, without written permission in the policy, shall render it void and of no force or effect."

The 17th condition is in the following words: "It is further hereby expressly provided, that no suit or action against said company, for the recovery of any claim under or by virtue of this policy, shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months next after any loss or damage shall occur: and in case any suit or action shall be commenced against said company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim so attempted to be enforced."

It was proved on the trial by the plaintiff below, who was sworn as a witness in his own behalf, and the fact was undisputed, that at the time of the application for insurance of the goods, and at the date of the policy (January 13th, 1860), one Helam Bennett was a partner of the plaintiff in business, and, as such, was the owner of the undivided half of the goods insured, and continued to be such partner and owner until the 14th day of March, 1860, when the plaintiff bought out his interest.

There was evidence tending to show (as to the policy on the goods) that King, the agent of the company, came to the store and wanted to insure the goods; that plaintiff signed the application for the policy, which was mostly blank when signed; that some one came in, and King turned around and said plaintiff could sign it, and he (King) could fill it out; that plaintiff told King he usually sold gunpowder and every thing usually sold in a country store, and that he intended to do so. And (in reference to the policy on the store) there was evidence that, at the time the insurance was taken, the keeping of

gunpowder was talked over with King, the agent, and he was told they had gunpowder in the store, and was asked if it would make any difference if powder was kept for sale; to which King replied " No."

There was also evidence that plaintiff, at the time of the application for the insurance on the goods, told the agent he did not think he (plaintiff) had a right to insure Bennett's share, and that King replied it would make no difference; that plaintiff had a right to insure the whole.

The fire occurred on the 31st day of March, 1860, by which the store building and the stock of goods were destroyed.

The Circuit Judge charged the jury that, "if the agent, King, at the time of making the policy on the goods, knew the interest of the parties — that they were jointly owned by the plaintiff and Bennett — and insured the whole stock, the policy would be valid for the whole stock insured." To this charge exception was taken, and this presents the first question we shall consider.

It is evident from the language of this charge, that it was intended to instruct the jury, that, if the agent, at the time of making the policy, knew the interest of the parties, &c., the policy would be valid for the whole amount of the interest of both partners, and that the plaintiff was entitled to recover in this action the whole amount of the loss of all the goods, though his interest at the time of the insurance was but one half, and though the insurance was in his name alone, and his declaration averred that, " at the time of making said policy, and from thence until the loss, &c., he was the owner of said property insured by said policy, and of the value, and to the amount, by the said defendant insured thereon."

Without attempting to decide what might have been the rule of law, had it appeared from the evidence that the insurance was really intended for the benefit of

the firm, the premium paid from the partnership fund, and the transaction subsequently ratified by the other partner; we think where (as in the present case) there is no evidence of this kind, and its whole tendency is the other way, the rule is well settled, in reference to a fire policy like this, that if one partner, or part owner of property held in common, insure in his own name only, the policy will cover his undivided interest, *and no more;* — *Graves v. Boston Marine Ins. Co.* 2 *Cranch,* 419, 440; 3 *Kent (5th ed),* 258; 2 *Duer's Ins.* §§ 24 *and* 20; *Finney v. Bedford Com. Ins. Co.* 8 *Metc.* 348; *Finney v. Warren Ins. Co.* 1 *Metc.* 16; *Pearson v. Lord,* 6 *Mass.* 81; 1 *Phil. on Ins.* 219, § 391; 1 *Arnould on Ins.* 146 *and note.* The rule may be otherwise when the partner making the insurance has made advances to the firm, which, by agreement, are to constitute a lien on the goods insured: — 2 *Duer on Ins.* § § 19 *and* 24; *Milliandore v. Atlantic Ins. Co.* 8 *La.* 557.

We do not see how the agent's knowledge of the interest of the parties, nor his belief or assurance that Hall had the right to insure the whole, can affect the question, so long as the insurance was not in fact made on the account, and for the benefit, of the firm. One partner can not, by reason alone of his interest as such, insure in his own name, and for his own benefit, the interest of his co-partner in the partnership stock. And, though such may have been the intention both of the assured and of the company, on entering into the contract, the policy, in legal effect, can operate only as an indemnity against loss to the extent of the plaintiff's undivided half of the goods. And, if the policy, when made, did not cover the other partner's undivided half, that portion would not be brought within it by the plaintiff's subsequent acquisition of the property from such other partner. The charge was therefore erroneous, and as the verdict of the jury, in accordance with the charge, was for the whole amount of the goods, the judgment must be reversed upon

this ground. But, as there is to be a new trial, we think it proper to indicate our opinion upon the two other questions raised in the case.

It was objected by the defendant below, that the action was not brought within the period of twelve months after the loss, according to the seventeenth condition attached to the policy. It appears from the bill of exceptions that a summons was issued in the cause March 18th, 1861 (thirteen days before the expiration of the twelve months), returnable on the second day of April, 1861; that, on the third day of April, 1861, the sheriff made a return upon the said summons that defendant could not be found in his bailiwick, that on the next day another summons was issued with which defendant was served, nothing appearing on this summons showing it to be a continuation of the first, except the word "*alias*" written by the clerk upon the face of the seal.

We do not deem it necessary to discuss the question whether this second summons, as an "*alias*," operated strictly as a continuation of the first, so as to save a right of action against a statute of limitations which had run upon it in the mean time; nor do we think it necessary to determine the validity of this species of limitation by contract. If valid at all, it was valid *as a contract,* and *not* as a *statute.* A limitation fixed by statute is arbitrary and peremptory, admitting of no excuse for delay beyond the period fixed, unless such excuse be recognized by the statute itself. But a limitation by contract (if valid) must, upon the principles governing contracts, be more flexible in its nature, and liable to be defeated or extended by any act of the defendant which has prevented the plaintiff from bringing his action within the prescribed period. The plaintiff had the whole of the twelve months in which to bring his suit; and it was as competent for him to institute it on the last as the first, or any intervening day. And the fundamental idea, the tacit condition upon which

such a limitation must rest, and without which it could not be tolerated for a moment, is, that the defendant should be accessible to the service of process by which suit may be commenced against him, if not for the whole period, at least for a sufficient time immediately preceding its close, to enable the plaintiff to commence his suit against him, by the service of process in the ordinary legal mode: otherwise the defendant would be enabled to take advantage of his own wrong, and, by absenting himself, entirely to defeat the plaintiff's right of action.

The defendant in the present case was a foreign corporation, doing insurance business in this State. By the act of February 15, 1859, full provision was made for bringing the action within the State: and the company, before doing any business in the State, were required to file in the office of the Secretary of State a resolution consenting that service of process may be made upon any agent of the company. Nothing is said in the case upon what agent the service of the second summons was made: but it must have been made upon some agent of the company. It does not appear whether there was an agent in the county of Jackson, or in any other particular county. It appears that S. S. Brown was the general agent of the company for this State, and that Knight was also an agent, but neither their residence nor place of business is stated. From any thing which appears in the case, the plaintiff was as much at liberty to bring his action in Jackson as in any other county, so far as the residence of an agent could have any bearing, if, indeed, it could have any under the law: and if an agent of the company resided in Jackson county, the action was certainly very properly brought there.

All that was necessary for the plaintiff to do to excuse the delay beyond the twelve months, was, to take the proper and usual means for instituting his suit, and getting service of process within the limited period: which

he did by issuing a summons thirteen days before the expiration of that period, returnable two days after it expired. The return shows that no service could be had during that time. We can see no possible ground for imputing any want of good faith to the plaintiff in his endeavor to get the process served in time. Upon the facts stated in the case, therefore, it appears to have been the fault of the defendant—the absence of an agent—that the first summons was not served, and the action com menced within the twelve months : and this is sufficient to defeat the limitation, or extend it till the service was made under the second summons, which was issued imme-diately on the return of the first.

As to the condition in reference to the keeping of gunpowder, there was evidence from which the jury were authorized to find, that the agent knew it was kept a the time, and was to be kept after the insurance, and that he assented to it, and induced the plaintiff to believe that it would make no difference.

Upon this point the Court charged, that, " if plaintiff informed the agent that he kept gunpowder, in his store for sale, and the agent intended to insure against keeping it, but neglected to indorse the permission on the back of the policy, such neglect would not make the policy invalid." The condition did not provide for any *indorse-ment* of this kind upon the policy, but the keeping of gunpowder was to render the policy void " without writ-ten permission in the policy." To this extent the charge was inaccurate, yet we do not think it can be treated as error of which the company can complain : since, we think the plaintiff was entitled to a still stronger charge in his favor. He would have been entitled to a charge that, if the agent knew it was kept, and to be kept, the keeping it would not render the policy void, whether the permission was indorsed or intended or neglected to be indorsed or not.

But the counsel for the plaintiff in error insists that the printed condition was notice to the assured of the agent's want of authority to assent to the keeping of gunpowder, &c., and that this assent could be given only by the company itself. This, at first view, would seem plausible, and might be sound, but for another principle which lies back of it and defeats its application. The principle to which we allude is, that notice to the agent is notice to his principal. The company must be regarded as knowing what he knew. If he knew that powder was kept at the time of the insurance, or to be kept during its continuance, the company must be regarded as having known it also. They had power to waive the condition; and by taking the premium and issuing the policy with such notice or knowledge, they must be regarded as having waived the condition which prohibited its keeping. It would be a gross fraud in the company to receive the premium for issuing a policy on which they did not intend to be liable, and which they intended to treat as void in case of loss : — *Bidwell v. North Western Ins. Co.* 24 *N. Y.* 302; *Frost v. Saratoga Mutual Ins. Co.* 5 *Denio,* 154; *Masters v. Madison Co. Mutual Ins. Co.* 11 *Barb.* 624; *Campbell v. Merchant's & Farmers' Mut. Ins. Co.* 37 *N. H.* 35; *Marshall v. Columbian Ins. Co.* 27 *N. H.* 157; *Hartford Prot. Ins. Co. v. Harmer,* 2 *Ohio* (*N. S.*) 452; *Howard Fire Ins. Co. v. Bruner,* 23 *Penn.* 50; *Clark v. Union Mut. Fire Ins. Co.* 40 *N. H.* 333: *see Angell on Ins.* § 470.

We see no error in the record or proceedings in the Court below, except that in reference to the interest of the plaintiff at the time of the insurance. For this error the judgment must be reversed, with costs in this Court, and a new trial granted.

The other Justices concurred.