JAMES P. LATTOMUS v. THE FARMERS' MUTUAL FIRE INSURANCE COMPANY, of the State of Delaware.

AFTER the loss and contents of a policy of insurance has been admitted in evidence, the court will not nonsuit the plaintiff because he failed to prove that it was sealed with the seal of the company.

So long as a party insured in a mutual fire insurance company whose contract of insurance according to the express terms of the policy, is declared to be perpetual unless terminated in the mode provided for by the by-laws of the company, pays his assessments or premiums according to the terms of the contract of insurance, it will continue valid and binding, notwithstanding a partial loss by fire may have previously occurred and been paid on the goods by the company.

In every contract or policy of insurance against fire, there is an implied promise or undertaking on the part of the insured that he will not after the making of the policy, alter or change the premises so as to increase the risk.

All the rules, conditions and by-laws contained in or annexed to the policy, constitute a part of the contract ; and in the case of a mutual insurance company, as the insured are members of the company, they are presumed to have knowledge of them.

Whether the risk on a stock of goods in a country store was increased by the building of a wooden shed adjoining it, is a question of fact to be submitted to and decided by the jury. A mere change. alteration, or addition which does not at all increase the risk, will not vitiate the policy ; but if the risk is changed and increased, and the insured fails or neglects to give notice to the company of such change of risk according to the requirements of the contract, he will forfeit his policy, and cannot recover for any loss that may occur subsequently to such change of risk. If, however, he gives notice to the company of such change of risk according to the requirements of the contract, he puts the company to their election whether they will avail themselves of the forfeiture of the policy, or not ; and they are bound in good faith to make such election, and if they elect to consider the policy forfeited, it is incumbent upon them to make their decision known ; but if they do not, they cannot afterward avail themselves of the plea of the change of risk. It is a familiar principle in the law that a party may always waive a condition in his own favor, and dispense with the performance of it. So, too, for the same reason, he may waive a forfeiture.

If the attention of the nearest agent of the company to the property insured was called to the alleged change of risk, and he examined the premises, or whether he personally examined them or not, if proper representations as to the character of the change having been made to him, he said anything to the insured calculated to lull him into a sense of security in regard to the validity of his policy, then under such cir-

cumstances, the insured did all that was required of him, and he could not be held responsible for the neglect or default of the agent to communicate information of the fact to his principals. Notice to the agent under such circumstances, was in legal contemplation notice to his principals ; and if after such notice, the company continued to collect and receive the assessments or premiums due from him on the policy, they waived their right to consider or treat it as forfeited.

If after an application has been signed and transmitted, and the secretary of the company has inserted in it without the knowledge of the applicant, a memorandum to the effect that there was the sum of $1200. already insured on the same goods in another company, naming it, to be and continue during the existence of this policy, the policy is delivered to and accepted by the insured without objection taken to the memorandum, it must be held to be a part of the contract. But if afterward, and after the insured has notified the nearest agent of the company that such other company had since refused to continue their insurance on the goods, the company has received from him the annual premiums upon the policy, it will thereby have waived the forfeiture of it upon that ground, and recognized it as a subsisting valid contract, and continued it. And notice of such refusal given to the agent of the company and payment of such premiums made to the agent of the company, will be notice given and payment made to the company.

A corporation being a creation of the law and an artificial person, can only act by agents, and all its instrumentalities are agents from its highest to its lowest officers and servants. A special agent is one who is authorized to do some special thing, whilst a general agent is one who is authorized to transact all his principal's business, or all his principal's business of some particular class or kind. If a special agent exceeds his authority, his principal is not bound ; but if a general agent exceeds his authority, his principal is bound, provided the agent acted within the ordinary and usual scope of the business he was authorized to transact, and the party dealing with the agent did not know that he exceeded his authority. If a person is held out to others, or to the public at large by his principal, as having a general authority to act for him in a particular business or employment, he cannot limit his authority by private or secret instructions. In such case, good faith requires that the principal should be bound by the acts of his agent done within the ordinary and usual scope of the employment in which he is engaged as such agent. An agent to insure, has an incidental authority to abandon the property insured upon a total loss ; and notice of a second or other insurance in another company given to an agent employed to negotiate for risks, to make surveys, and to receive applications for insurance, is within the scope of the business and authority of such agent, and will bind the principal whether the agent has communicated such notice to him, or not.

The company having already paid the party insured $523.69, under the policy on a partial loss of the goods by a previous fire which occurred

in December 1863, it was only answerable to him for the difference between that sum and the sum of $1200, the whole amount of its insurance on the goods, with interest from the time when that difference should have been paid to him.

THIS was an action of covenant on a policy of insurance by James P. Lattomus against The Farmers' Mutual Fire Insurance Company of the State, to recover the sum of twelve hundred dollars insured on a stock of goods in a store kept by him in the town of Clayton in Kent County, and which were totally destroyed by fire in the month of May, 1865. The policy of insurance was also destroyed with his other papers in the store. The entire destruction of the store and its contents was proved by the witness who was the first to discover it on fire, between eleven and twelve o'clock at night, which was on a Sunday and also a dark and rainy night, and who at first could not discover any one, and tried alone to force the door to get into the store without success, thinking that possibly the plaintiff and owner, whom he knew very well, might be in it; he however could not arouse any one, but in about twenty minutes after he first discovered it on fire, in crossing the street he ran suddenly against him in the dark. He was entirely silent, and was making no outcry and giving no alarm. He was full dressed, but although he generally slept in the store, he had not the key of it about him, and together they set to work to break it open, but it took some time to do it, and by the time it was done, the whole interior of it was so enveloped in flames that they could not enter it. The loss and destruction of the policy of insurance was proved by the plaintiff himself, and the books of the company produced on notice from the plaintiff, were put in evidence exhibiting his application for insurance of the goods in the sum of $1200, and the deposit of his promissory note to the company for $84.00 dated October 28th, 1863. The application also stated that it was for the insurance of a stock of goods in a new frame store house at Smyrna Depot, such as were generally kept in country stores, with stove

and pipe well secured, and location not hazardous, and by
consent of parties, recently insured also in The Kent Co.
Mutual Fire Insurance Company, in the sum of $1200.
At the foot of the application, and after it had been signed
by the plaintiff, was the following entry made by the
Secretary of the company : " It is presumed that this
application is intended to cover jointly with the Kent Co.
Mutual Fire Insurance Company, the stock of store goods
above named, each in the proportion of $1200." Also
the Premium Book of the company exhibiting the pay-
ments by the plaintiff to the company of the annual inter-
est or premiums on his note up to January 3rd, 1866. A
printed form óf the policy destroyed was also proved by
the Secretary of the company and put in evidence on be-
half of the plaintiff, and the written notice of the plaintiff
to the company of the loss sustained by him by the fire,
dated May 29th, 1865, and which according to the esti-
mates of the witnesses produced and examined in regard
to the matter, varied from $2500 to $3000. It was also in
proof that a previous fire had occurred in the same store
of the plaintiff in the month of December, 1863, on which
the two companies had settled the loss with him under the
policies of insurance before mentioned, by each paying
him the sum of $523.69, and after which the Kent County
Mutual Fire Insurance Company declined any longer to
insure his goods, and thereupon their policy on them was
duly terminated, of which the plaintiff gave notice on the
4th of January 1864 to the agent of the defendants then
residing nearest to him, who being sworn, testified that in
February following, he notified the President of the com-
pany of the same. In the spring of 1865 a wooden shed,
twelve by twenty-eight feet, was built adjoining his store,
but no fire or lights had been kept in it, and before it was
entirely finished the attention of the agent of the company
residing nearest, was called to it by the plaintiff, when he
was asked by him if he thought it would increase the risk
or danger of fire to the store, to which he replied that he
thought it would not. In December, 1863, a partial loss

occurred by fire of the goods, and the two companies adjusted and settled it by each paying him $523.69, when the other company terminated their insurance and refused to continue it; but defendant's was renewed by their agent on the fourth of January 1864, when the plaintiff informed their agent that the Kent County Mutual Insurance Company had refused to renew and terminated their insurance on his goods, and which the agent testified he duly communicated to the President of the company, and that the defendants were apprised of that fact without delay by him. The agent, however, gave no information to the company of the erection of the wooden shed adjoining the store, and the President of the company testified that he never was informed by the agent of it, that the Kent County Company had refused to continue their insurance on the goods after settling the previous partial loss upon them with the plaintiff. He also testified that he did not know that the insurance of the defendants had been renewed after that occurence, or that any premiums had since been paid by plaintiff to the defendants, as he had been too much pressed with business to look over the accounts of the agent to whom they had been made.

*Gordon, for the defendant,* on the closing of the testimony for the plaintiff, submitted a motion for a nonsuit. It is an action of covenant upon a sealed instrument, or a policy of insurance under the corporate seal of the company, and yet there had been no evidence whatever produced that the instrument declared on, had ever had the seal of the company affixed to it. It had not been produced, but its absence had been accounted for, and its contents pretty well made known, except as to the seal by which alone it could speak for or bind the company, as to which nothing had been asked and nothing had been said by any witness.

*T. F. Bayard, for the plaintiff.* The proof was that the policy was issued in all respects strictly in accordance with the form produced, proved and exhibited in evidence, and

with the practice uniformly pursued by the company in the execution and emission of them, and as it had been utterly consumed in the fire of the store, and could not be produced to speak by its seal, and the charter of the company expressly required that every such instrument issued should be sealed with the corporate seal of the company, the court under such circumstances would presume, and would also instruct the jury to presume, in the absence of any proof to the contrary, that it was duly sealed with the seal of the company.

*Comegys, for the plaintiff.* As the policy had been destroyed and it could not speak for itself, the next best evidence of it should be produced that was practicable under the circumstances, and that would be the testimony of some one who had seen it and could testify that it bore what purported to be, and what to the best of his knowledge he believed to be, the corporate seal of the company. But not a particle of even this secondary degree of evidence had been adduced in regard to the matter, or that the instrument bore even the semblance of a seal of any kind whatever, and no such question was even propounded to any one of the witnesses.

*By the Court.* The motion for a nonsuit must be overruled. The destruction of the policy has been proved and its non-production on the trial satisfactorily accounted for, and upon that, secondary evidence of its existence and contents as a valid policy of the company executed and issued in the proper form and usual manner, has been admitted without objection, and is now before the jury, and whether the evidence of it was now sufficient, was a question for them, and not for the court to determine.

The special pleas were numerous in the case, but will be found sufficiently stated with the replications, in the charge of the court to the jury.

*T. F. Bayard, for the plaintiff.* The rule of construction
52

in such cases is that the language of the policy is the language of the insurer, and by the express terms of this policy it was to be perpetual subject only to termination as specified in it, upon the transfer, or alienation, or removal of the property insured out of the boundaries of the company, or to adjustment, or withdrawal, when either party upon the notice provided for in the by-laws of the company, may desire it. Consequently the first fire and loss did not terminate it, as neither the company, nor the plaintiff had thereupon elected to terminate it; and more particularly must it be considered to have endured and continued, inasmuch as he afterward continued to pay, and the company continued to receive, the premiums or assessments upon it, until the second fire and total destruction of the goods occurred in the latter part of the month of May, 1865. It was in the usual form of policies issued by the company. The application and survey were also made in the usual form and manner, and were approved by the appropriate agent of the company; but the written condition or entry afterward appended and endorsed at the foot of it, by the Secretary of the company, was an unauthorized interpolation by that officer, made wholly without the knowledge and consent of the plaintiff, the applicant, and therefore it could not vary or qualify it. As to the fact relied upon by the other side, that by the withdrawal of the Kent County Insurance Company from the joint insurance of the goods, the policy of the defendants was forfeited, the subsequent acceptance of the premiums upon the policy by the defendants would have constituted a waiver of such forfeiture, even admitting for the sake of argument, that it amounted to, or worked a legal forfeiture of the policy, but which he expressly and emphatically denied. *Add. on Contr.* 878. 1 *Phil. Ev. sec.* 10. The by-law of the company in regard to the insurance of the same property in other companies, required that such fact should be so stated in the application for insurance, and in default thereof, or upon a false statement in regard to it, the policy issued by the company thereon

should be void ; and it further required that if any person during the existence of a policy issued by that company, should procure insurance on the same property from any other company, he should give immediate notice thereof to the Secretary of the company, and if satisfactory, the assent of the company thereto should be endorsed on the policy of insurance, and in default thereof the policy should be void ; and in case of any double insurance, this company should be liable only for such ratable proportion of the loss or damage, as the amount insured by this company should bear to the whole amount insured thereon, without reference to the dates of the different policies. But notwithstanding the specific requirement expressed in it, a notice to the nearest agent of the company of a prior insurance in another company, was sufficient notice to his principal, the company itself, and it was not material in such case to the applicant, whether such agent communicated it to the company, or not. *McEwen v. Montg. Ins. Co. 5 Hill* 154. 2 *Phil. on Ins. sec.* 1876. And even verbal notice to the agent of the fact, was in such case sufficient. *Sexton v. Montg. Ins. Co.* 9 *Barb.* 191. *Masters v. Mad. Ins. Co.* 11 *Barb.* 624. 2 *Phil. on Ins. sec.* 1880. *Ang. on Ins. secs.* 91, 243. 2 *Phil. on Ins. sec.* 1806. Notice of such fact may also be waived by the company, and whenever it based the denial of its liability on any other ground, or on general grounds without assigning any special reason for it, it would constitute and operate as a waiver of their objection to a defective notice. *Ang. on Ins. secs.* 244 to 248. *Ætna F. I. Co. v. Tyler,* 16 *Wend.* 385. As to the subsequent erection of the wooden shed adjoining the store, mere alterations in the premises insured, although extensive and important in their nature, will not of themselves discharge the insurer; but such would be their effect, if they were expressly prohibited by the policy, because they would then involve a direct breach of warranty, and they would also have that effect, although not expressly forbidden, if they would materially increase the risk. 2 *Pars. on Contr.* 428. If the company in this case

pursued such a course toward the plaintiff, by accepting the payment of his premiums and assessments on the policy, as to lead him to believe that he was duly and safely insured in it, and to rely with implicit confidence on the validity and sufficiency of it, the company would now be necessarily concluded and estopped from taking any advantage of its own wrong, or any exception to the validity of it. 2 *Pars. on Contr.* 793.

*Gordon, for the defendants.* The facts proved in the case and the proper construction to be given to them, clearly and conclusively proved, in his opinion, that this was a joint insurance by the defendants with the Kent County Insurance Company, of the goods of the plaintiff, and continued in force and effect as such, according to the understanding and agreement of the parties to it, only so long as the goods continued jointly insured in both companies ; and that consequently, when the other company declined to renew their policy upon them, and withdrew from their joint insurance of them, the policy of the defendants expired, and they were thereby released and discharged from any further liability upon it. Whether the risk was increased by alterations in, or by additions to the premises, was a question of fact for the jury. 10 *Pick.* 535. In a case of partial loss incurred and paid, and a subsequent loss sustained by the insured on the same goods, he could recover only the difference between the sum paid on the previous loss and the entire sum insured upon the property. *Trull v. Roxb. M. F. Ins. Co.* 3 *Cush.* 263. In that case the defendants, a mutual fire insurance company, insured the plaintiff in the amount of $2000 on two buildings, $1000 on each for seven years. The policy contained a stipulation that the defendants would make good all damages by fire to the premises during the term, not exceeding the amount insured, and that in case of loss the defendants might replace or repair within a reasonable time. Both buildings were destroyed by fire within the term, the one entirely, and the other with the exception of a few planks

and sills, and were replaced by the defendants according
to the stipulation in the policy, at the expense of $800 for
one, and $650 for the other ; subsequently, but within the
term, both of the new buildings were entirely destroyed by
fire.    It was held by the court that the plaintiff was there-
upon entitled to recover on the policy the sum of $550,
the difference between the sum insured and the sum paid
for former losses on the two buildings.    Where a policy
of insurance against fire provided that the insurer should
not be liable for more than the sum insured in any case
whatever, and he paid for repairing a partial loss, and
afterward a total loss happened, it was held that he was
liable for no more than the difference between the sum
already paid and the whole sum insured.    And where in
the same policy, one sum was insured on one building, and
another sum on another building, and both losses were
upon the same building, it was held that the insurer was
liable for only the difference between the sum paid and
the sum insured on that building alone.    *Curry v. The
Commonw. Ins. Co.* 10 *Pick.* 535.    According to the evi-
dence, the inquiry made of Carrow, the agent of the com-
pany, by the plaintiff whether the shed would increase the
risk of the policy, it should be observed, was made before
it was completed and whilst Witlock was still engaged in
erecting it ; but the by-law of the company expressly
required that such changes should be reported to the agent
when finished in order that the same might be duly cor-
rected, or adjusted and manifested in writing by the Secre-
tary of the company in a proper and formal manner, or
otherwise the company would not be responsible ; and,
therefore, no such casual and idle inquiry as had been
proved on that occasion, could possibly be regarded as in
any sense a proper compliance with such a formal and
important requirement in the case as that was.

*Comegys, for the same.*    There is a general agency, and
there is a special agency, and the importance of the dis-
tinction between them consisted in the rule that if a special

or particular agent exceeds his authority, the principal is not bound by his act, but if a general agent exceeds his authority, the principal is bound, provided such agent acted within the sphere of the general authority delegated to him and the usual business committed to his charge, and the party dealing with him as such, did not know that he had exceeded his authority. 1 *Pars. on Contr.* 41, 42. Such being the general principle and distinction between two such classes of agents, what kind of agents of this company were Griffith and Carrow, with whom all the business of the plaintiff in this case had been transacted, so far as it related to the company and had been brought to light during the progress of this trial ? They were clearly special or particular agents merely, appointed for certain limited purposes simply ; and granting all that had been proved with regard to them, and particularly with regard to the fact that the attention of the latter was called to the putting up of the shed adjoining the store whilst Witlock was yet erecting it, and when he was asked if in his opinion it would increase the risk and danger of fire to the store and goods, it was wholly immaterial what his opinion was, or what his answer may have been, because he had no authority as agent of the company under its by-laws and printed regulations in regard to such matters, to decide such a question, or to fix the liability of the company by any opinion which he might assume or venture to express in answer to such a question so propounded to him. For, as his colleague had already observed, the printed by-laws of the company specially framed and adopted for just such a case, and which accompanied the policy of insurance and was then in the hands of the plaintiff, made it his own immediate duty to make the representation in a proper manner to the nearest agent, and to have the insurance corrected, or adjusted and manifested in writing by the Secretary of the company, at the risk of forfeiting the same if he failed to do it. But that he did not do, and as Carrow had well said, from the manner in which the question was put to him as he was

casually passing the shed whilst they were at work upon it, he attached no importance to it, and did not regard it as addressed to him in his official capacity, as the plaintiff knew as well as he did that such was not the way of transacting such business, or settling or answering even such questions, and therefore he took no further notice or account of the matter.   But considering it in its strongest aspect for the plaintiff, and in the most favorable light for his side of the question, and conceding for the sake of argument, that the agent intended it as a final and definitive answer to the inquiry, and to conclude the company by it, then he only had to say that as a special and particular agent of it for the purpose of receiving applications and making surveys for original insurance, and representations afterward of this particular character, for the sole purpose of communicating such representations to the Secretary of the company to be formally corrected, or adjusted and manifested in writing by that officer, he clearly and grossly transcended his power and authority in the premises, and it therefore amounted to a mere nullity, if such was his purpose, and that the plaintiff must have known, as well as the agent himself, with the by-law of the company in his possession, when he propounded such a question and received such an answer from him.  1 *Pars. on Contr.* 41, 42.   2 *Pars. on Contr.* 424.    77 *E. C. L. R.* 868.

*T. F. Bayard.*   The cases which had been cited on the other side to show that if the plaintiff was entitled to recover at all, he was entitled to recover only the difference between the amount paid him by the company on his prior and partial loss, and the whole amount insured in his policy, were distinguishable from the present case, and therefore the principle ruled in them was not applicable to it.   He would leave it to the court to say what was the proper meaning and construction of the by-law of the company, of which so much had been said in the course of the argument on the other side, without entering into any

argument to expose the fallacy of the reasoning on the other side in regard to it.

*The Court, Gilpin, C. J., charged the jury.* This is an action of covenant brought by the plaintiff, James C. Lattomus, against the defendants, The Farmers' Mutual Fire Insurance Company, on an alleged contract of insurance against loss by fire, to recover the sum of twelve hundred dollars stipulated to be paid by the defendants to the plaintiff in the event of loss by fire, of a certain stock of store-goods belonging to the latter, and contained in a store-house formerly occupied by him, at Clayton near Smyrna in Kent County in this State. Insurance in a general or comprehensive sense, may be defined to be a contract whereby one party agrees to take upon himself, and to protect the other contracting party from, certain perils or risks to which certain property may be exposed, and covenants or promises in consideration of a stipulated sum of money paid or agreed to be paid as the price of the risk, to *indemnify* the insured against these perils or risks. He who takes upon himself the risk, is called the *insurer*, and he who is to be protected and indemnified, is called the *insured*, and the money paid as the price of the indemnity, the *premium* for the risk run, whilst the instrument or writing which evidences or constitutes the contract, is called the policy of insurance. The alleged contract in this case, as I have said, was an insurance against loss by fire. The plaintiff alleges that the defendants, in the month of October 1863, insured one-half of his stock of store-goods, in the sum of twelve hundred dollars ; that the insurance was to be considered perpetual, and only subject to termination, according to the terms and conditions contained in the policy of insurance, or according to the provisions of the act of incorporation, or of the by-laws of the company; and he insists that, as the property covered by the insurance, and destroyed by the fire that occurred in the month of May 1865, amounted to between $2500 and $3500, he is entitled to recever the whole sum of twelve hundred

dollars, with interest from the time when that sum should have been paid. To this claim of the plaintiff the defendants rely upon sundry grounds of defence set forth specially in certain pleas, as they are called, which he has filed in the case. First, that the contract or policy of insurance relied on, is not his deed. Secondly, that the plaintiff did not deliver a deposit or premium note as alleged. Thirdly, that the plaintiff did not pay the sums assessed as premiums up to January 1866. Fourthly, that plaintiff was not the sole owner of the stock of goods insured. Fifth, that the goods were not destroyed by fire as alleged. Sixth, that the plaintiff did not give *immediate* notice of the loss, according to the provisions of the by-laws of the company. Seventh, that the plaintiff did not give notice within ten days. And upon these seven pleas the plaintiff has taken issue, that is, he denies their truth ; and it is for the jury to decide the issues of fact, raised by these pleas, according to the evidence before them. The next ground of defence relied on by defendant, being the ninth plea, is that after the execution of the policy, in the month of December 1863, there occurred a partial loss by fire, and that the defendants, in conjunction with the Kent County Insurance Company, who were also insurers, adjusted and paid the same to the plaintiff, and that thereupon the policy of insurance of October 1863, ended or became null and void.

To this plea, the plaintiff replies specially, that after the payment of the partial loss, mentioned in the plea, to wit, about the first of January 1864, the defendants renewed or continued the policy of insurance at its full amount of $1200, and assessed upon the plaintiff's deposit note the full sum due from him on that amount, to the defendants, according to the terms of the policy, and received from the plaintiff such full assessment as premium of insurance due from him, as are assured under the said policy; whereby, (as he contends) the policy of insurance continued in full force from and after the fourth day of January 1864, until the second Monday in January 1866. And without

53

this, that by reason of such payment, the policy became void &c.

Now, under this plea and replication, a question is raised as to the effect of the partial loss and payment which occured in December 1863, on the validity of the policy. The defendants contend that in consequence of such partial loss and payment, the policy became void. On the other hand, the plaintiff insists that it continued in full force. And thus whilst the question of fact raised by this issue, is with the jury for their decision, the question of law involved in the issue, as to the effect of such partial loss and payment on the validity of the policy, is devolved on the court for our decision ; and upon that question it is our duty to charge you. The question of *fact* is whether the plaintiff paid the defendants the assessments or premiums for the years 1864 and 1865, or in other words, from the first or fourth of January 1864 up to the second Monday of January 1866, according to the terms of the policy. Undoubtedly, if he *failed* to pay these assessments or premiums, or any of them, as required by the terms of the policy, he can not recover in this action. But if you shall be of opinion from the evidence before you, that he did pay them according to the provisions of his contract of insurance, what then ? And here arises the question of law on which we are to express an opinion for your guidance.

In the first place, it may be proper to observe that this is not a marine insurance, or sea risk, but an insurance on a stock of goods in a country store against loss by fire. The loss of December 1863, was but a partial loss, it did not amount to the whole sum mentioned in the policy, it was less than $1200, the amount insured. Again, the insurers were, and are, a mutual insurance company, and their contract of insurance, according to the express terms of the policy is declared to be perpetual, the language of the policy being, " which insurance is to be considered as perpetual, only subject to termination upon the transfer or alienation or removal of the property out of the boundaries of the company : or to adjustment or withdrawal,

when either party, upon the notice provided for in the by-laws of the company, may desire it." The insurance, therefore, was to continue so long as it was not put an end to, or terminated in the mode, or according to the provisions contained in the by-laws of the company, or until it was terminated or rendered void by some wrongful act or other default on the part of the plaintiff. And, if it was not so terminated, the contract of insurance was to continue in force, so long as the plaintiff paid the assessments or premiums according to the terms of the contract. Now, as I have already remarked, it is for you to say, whether or not, he has paid these assessments or premiums. If you shall be satisfied from the evidence that he paid them according to the terms of the contract of insurance, then we say to you that the contract of insurance continued valid and binding, notwithstanding the partial loss and payment which occurred in December 1863.

The next ground of defence relied on, and which is set forth in the tenth plea is, that the plaintiff changed and increased the risk by the erection of an adjacent frame building, and did not give notice thereof to the nearest agent of the company. As to this plea the plaintiff replies that the fact of the erection of the said addition and frame building was forthwith, on its completion, duly made known by proper representations to the nearest agent of the defendants, who thereupon examined and inspected the premises and the addition and building, and informed the plaintiff that no change in the risk was caused by the erection, and that the insurance was not effected thereby without this, that the risk insured against was in fact changed. Now, in regard to the law as to a change of risk, the doctrine on the subject is that in every contract or policy of insurance against fire, there is an implied promise or undertaking on the part of the insured, that he will not, after the making of the policy, alter or change the premises so as to increase the risk. This would have been so in this case, even if there had been no by-law on the subject. And I may remark here generally, that all

the rules, conditions and by-laws, either contained in, or annexed to the policy, constitute a part of the contract; and that in the case of a mutual insurance company, as the insured are members of the company, they are presumed to have knowledge of the by-laws. In this case, there is a by-law on the subject of changing the risk, annexed to the policy in these words : " where the risk has been changed either within itself, or by the surrounding or adjacent buildings, it shall be incumbent on the insured to make the proper representations to the nearest agent, and have the same corrected or adjusted, and manifested in writing by the secretary : otherwise the company will not be responsible." The alleged change in the risk, by the erection of the shed or building, probably took place in April 1865, for the last fire occurred in the latter part of the month of May following, and one of the witnesses, Whitlock, states that the fire took place four or five weeks after the shed was finished. Whether the risk was changed, that is, increased by the erection of the frame shed or building complained of, is, in the first place, a question of fact, to be submitted to, and decided by the jury. A mere change, alteration, or addition which does not at all increase the risk, will not vitiate the policy. But if the risk is changed and increased, and the insured fails or neglects to give notice to the insurers of such change of risk, according to the requirements of the contract, he forfeits his policy, and can not recover for any loss that may occur subsequently to such change of risk. If, however, he gives notice to the insurers of such change of risk, according to the requirements of the contract, he puts the insurers to their election, whether they will avail themselves of the forfeiture of the policy or not, and they are bound in good faith to make such election, and if they elect to consider the policy forfeited, it is incumbent upon them to make their decision known. They cannot play both fast and loose, they cannot lay by and take the chances of the chapter of accidents, and if they turn out against them, then turn round and avail themselves of the plea of

of change of risk. It is a familiar principle in the law, that a party may always waive a condition in his own favor, and dispense with the performance of it. So too, for the same reason, he may waive a forfeiture. The questions of fact put in issue by the tenth plea and the replication thereto, is, first whether there was a change of risk, that is, whether the risk was increased. If the risk was not increased, as I have before intimated, the policy was not vitiated thereby ; but, if you shall be satisfied by the evidence, that the risk was changed, then you will further inquire and determine from the evidence, whether notice of such change of risk was given by the plaintiff—that is, whether he made " proper representations" in that regard to the " nearest agent " of the company, as required by the by-law annexed to the policy, and which I have read in your hearing. On this question you have the testimony of George Whitlock and Thomas Carrow before you, the latter being the " nearest agent " of the company. You will recollect their testimony. You also have before you, the written statement of Mr. Carrow. If you shall be satisfied by the evidence that the risk was changed, and shall not be satisfied that notice, or rather proper representations of the same were made to Mr. Carrow, who was then the nearest agent of the company, then we say to you that the plaintiff forfeited his policy, and cannot recover. But if, on the other hand, you are satisfied from the evidence that such representations of the alleged change of risk, were in fact made to Mr. Carrow, or if his attention was called to it, and he examined the premises, or whether he personally examined the premises or not, if proper representations as to the character of the change having been made to him, he said any thing to the plaintiff calculated to lull him into a sense of security in regard to the validity of his policy, if, for instance, he said to the plaintiff that he did not think it increased the risk—or that he thought it safer than it was before—or that he did not think it would affect the policy—or that he did not think the policy needed any alteration, or any other words calculated to

lead the plaintiff to rest on his policy as a valid security, then we say to you that under such circumstances, in our judgment, the plaintiff did all that was required of him. The defendants insist that he was bound to go further, and have the same corrected and adjusted, and manifested in writing by the secretary of the company. We do not think so. They had an agent on the spot to attend to this business, to whom the plaintiff was expressly required to give notice of the change of risk, if any such there was, and he cannot be held responsible for the neglect or default of the defendant's own agent in failing to communicate information of the fact to his principals. If either party is to suffer in consequence of the neglect or default of the agent, it is but just that it should fall on the defendants, instead of the plaintiff. Notice to the agent under such circumstances, was in legal contemplation, notice to his principals. And if, after such notice, the defendants continued to collect and receive from the plaintiff the assessments, or premiums of insurance due from him as assessed under the policy, they waived their right to consider or treat the policy as forfeited. For it is well settled that if after a policy has been forfeited by non-observance of a condition annexed to it, the insurers continue to receive the premiums with knowledge of the breach of the condition, they will be deemed to have waived the forfeiture, and will not afterward be permitted to avoid the policy on that ground.

Another ground of defence relied on, and which is set forth in the eleventh plea, is, in substance, that the condition on which the defendants insured the goods of the plaintiff, was that the plaintiff should also maintain an insurance in the Kent County Insurance Company to the amount of twelve hundred dollars, which insurance he suffered to expire. To this plea the plaintiff replies specially, denying that the maintenance of a co-insurance in the Kent County Company was a condition of the insurance by the defendants, and averring that the defendants continued to receive and take premiums from the plaintiff

on his policy, after notice had been given to the defendants that the Kent County Company had declined to continue their insurance. Thus again is presented mixed questions of law and fact to be decided by the Court and Jury. It seems that at the time when the defendants executed and issued their policy to the plaintiff in the month of October 1863, the latter held a policy in the Kent County Company for the sum of $1200 on the same stock of goods, and that, according to the testimony of Dr. McCabe, there was inserted in the policy of the defendants, a memorandum to the effect that there was the sum of $1200 already insured in the Kent County Mutual Insurance Company to be and continue during the existence of this policy. It is contended that the defendants had no right to insert this memorandum in the policy. That it was not warranted by the terms of the plaintiff's application as signed by him. That certain lines in relation to that subject, were interpolated by the Secretary and Treasurer of the company into the plaintiff's application, after the latter had signed and delivered the same to the defendants, and without his knowledge; and that as the insertion of the memorandum in the policy was not warranted by the terms of the plaintiff's application, it constitutes no part of the contract of insurance. Conceding that the Secretary and Treasurer had no right to interpolate any thing into the body of the plaintiff's application without his consent after he had signed it, yet as the memorandum was inserted in the policy at the time when it was delivered to the plaintiff and was accepted by him without any objection to the memorandum being taken, it is now too late to avail himself of that objection, and it must therefore be held to be a part of the contract. But the plaintiff also contends that, assuming the memorandum to be a part of the contract, the defendants are precluded from treating the policy as forfeited on that ground, because the defendants have waived their right of forfeiture by reason of their having received from the plaintiff the annual premiums on the policy after they had notice of the declination or refusal of the Kent County Company to continue their insurance. On the other

hand the defendants deny that they had notice of the change of risk—or that the Kent County Company had declined or refused to continue their insurance,—and they deny that any premiums were paid to them by the plaintiff on his policy after the partial loss by fire which occurred in the month of December 1863. They also deny that notice was given to their agent of these several matters, or either of them—or that premiums of insurance, as alleged, were ever received by their agent or agents after the partial loss of Dec. 1863, with their knowledge, consent, authority or approval. And they insist that even, if notice were given by the plaintiff to their agent of the refusal of the Kent County Company to continue their insurance, and of the change of risk by the building of the shed, they are not bound by it; and that if payments of premiums were made to, and received by their agent, without the defendant's knowledge or approbation, such payment under the circumstances of this case, imposed no obligation on them, and had not the effect of perpetuating or continuing the contract of insurance; but that the same terminated on or before the second Monday of Jan. 1864. In other words, they insist that notice to their agent, was not notice to the Company; and that payment to their agent of premiums under the peculiar circumstances of this case, cannot be considered in fact, or in law, as payment to the company. The questions as to the notices and payments of premiums to the agents of the defendants, are to be decided by the jury as other questions of fact, according to the evidence. The legal effect of such notice and payment, is a question of law to be decided by the Court.

Now, as respects the fact of the refusal of the Kent County Company to continue their insurance, Joseph C. Griffith who negotiated the policy of October 1863, stated that he was agent of the defendants from 1853 to February 2nd. 1864, when he resigned; that on the 4th of January 1864, at the time when the plaintiff paid him, as the agent of the defendants, the premium of $4.20 for the year 1865, the plaintiff informed him that the Kent County Company

had declined or refused to continue their insurance. And stated further, that he informed Dr. McCabe, the Secretary of the Company, of the fact by letter, and that he knows that Dr. McCabe knew on the 2nd. of February 1864, that the Kent County Company had refused to continue their insurance, because in a conversation which he had with the Doctor at that time, he learned from him that he had such knowledge. Dr. McCabe, however, denies that Mr. Griffith ever informed him that Lattomus had given him (Griffith) notice that the Kent County Company had declined to continue their insurance, or that he had knowledge that Lattomus had given such notice, or that he had had any conversation with Mr. Griffith on the 2nd. of February, on that subject. He also denies that Mr. Carrow, the Agent who succeeded Griffith on the resignation of the latter, gave the company any notice of the erection of the shed. He admits that Lattomus was returned on the lists of both Griffith and Carrow, as an insured who had paid to them the annual premiums, and that Griffith and Carrow had accounted for and paid over the money to the company ; but he says in substance, that he was not aware of the fact that Lattomus was so returned, or that the money had been accounted for and paid over by the agents, although the lists had been delivered to him and remained in his custody ; for he says he did not observe Lattomus' name on the lists, owing to the amount of papers and business before him, and that the lists were not transcribed on the books of the company for a long time after they had been received. If I have misstated, or omitted any material fact in the testimony of these witnesses, I trust your memories will correct the one and supply the other. Mr. Sharpe, the President of the Company, says he was present during most, if not all of the time that Griffith was in the office settling with Dr. McCabe, but he does not recollect hearing one word about the refusal of the Kent County Company to continue their insurance, and he thinks if anything had been said on the subject, his ears would have been sharp enough to have heard it, for reasons which

54

he assigned, and which you doubtless remember. It is your duty to consider and pass upon these questions of fact, and if you shall not be satisfied from the evidence that Lattomus gave notice to Mr. Griffith, who was then the agent of the company, then we say to you that the policy was forfeited by his neglect to do so, and he is not entitled to recover. If, however, you shall be satisfied from the evidence that the plaintiff did give notice to Griffith that the Kent County Company declined to continue their insurance, and also that the agents of the company, Griffith and Carrow, actually received from the plaintiff the annual premiums of insurance on his policy for the years 1864 and 1865, then the question of law arises as to the legal effect of such notices and payments, and whether and under what circumstances and to what extent, the defendants are bound by them. And I now repeat to you briefly, but substantially the proposition which I laid down to you in relation to notice of the change of risks, for that doctrine is equally applicable to notice of the refusal of the Kent County Company to continue their insurance, and also to the payments of the premiums. If the insurers, (the defendants,) in legal contemplation, had notice given them by the insured of such refusal on the part of the Kent County Company, then they were put to their election, and were bound to decide whether they would avail themselves of the forfeiture or not. And all I have said in respect to another branch of this case, in regard to playing fast and loose, and awaiting the chances of the chapter of accidents, applies with equal force to this question. If they had notice, and did not elect to avail themself of the forfeiture, they waived the forfeiture. If they received premiums after notice, or knowledge of the forfeiture, they recognized the policy as a subsisting valid contract and continued it.

And this brings me to consider the legal effect of notice, and payment of premiums to an agent which necessarily involves a consideration of the law of agency. And here I remark generally, that a corporation being a cre-

ation of the law, a legal entity, or artificial person, can only act by agents. All its limbs or instrumentalities are agents. Its President, Directors, Secretary, Treasurer, and all others who act for it, are its agents. A special agent is one who is authorized to do some special thing. A general agent is one who is authorized to transact all his principal's business—or all his principal's business of some particular class or kind. If a special agent exceeds his authority, his principal is not bound; but if a general agent exceeds his authority, his principal is bound, provided the agent acted within the ordinary and usual scope of the business he was authorized to transact, and the party dealing with the agent did not know that he exceeded his authority. If a person is held out to third persons, or to the public at large by his principal, as having a general authority to act for him in a particular business or employment, he cannot limit his authority by private or secret instructions. In such cases, good faith requires that the principal should be bound by the acts of the agent done within the ordinary and usual scope of the employment in which he is engaged as such agent. Notice of facts to an agent, is held in law to be constructive notice to the principal, where the notice is connected with, or has reference to the subject matter of his agency, since upon general principles of public policy, it is presumed that the agent made known such facts to his principal; and if he has failed to communicate them to his principal, still as the principal has intrusted him with the particular business, third parties have a right to consider the agent's acts and knowledge binding upon his principal. So then, the acts of the agent done within the ordinary and usual scope of the business or employment in which he is engaged for his principal which affect the interests of third persons, will bind his principal. For it is a maxim of the law in respect to the liability of the principal to third persons for acts done by the agent, that he who acts by another, acts by himself. And hence it is that payments made by a third person to an agent in the

course of his employment, is payment to the principal; and whether the money is actually paid over by the agent or not, it is conclusive on the latter. The incidental powers of an agent are generally implied or deduced from the general scope and nature of the business to be transacted. As, for instance, it has been held that an agent to insure, has an incidental authority to abandon the property insured to the underwriters in case of total loss. So too, it has been held, that notice of a second or other insurance in another company given to an agent employed to negotiate for risks, to make surveys, and to receive application for insurance, is within the scope of the business and authority of such agent, and will bind his principal, whether the agent has communicated such notice to the principal or not. 2 *Phil. on Ins. secs.* 1876–1880. 11 *Barb.* 624. 9 *Barb.* 191. *Angel on Ins. secs.* 91, 243, 244–5–6–7–8.

If Griffith and Carrow were not special agents—if their authority was not limited to some special thing—if they were not retained to do and perform merely some one or two special or particular acts, they were not special agents. If they were employed to obtain risks, and to negotiate contracts of insurance for the company, to receive applications, and take deposit or premium notes, to make surveys, and to collect and receive premiums of insurance, as well on new policies as on old and continuing policies, they were, as to all these matters of busi·ness and things incident thereto, or falling within the ordinary or usual scope of the business in which they were so employed, the general agents of the defendants. They were not only such general agents, but in the language of the President or Secretary of the company, or perhaps of both, they were also mediums of communications between the insured and insurers, appointed by the latter to see after and protect their interests. If, therefore, you are satisfied that the facts just indicated have been established by the evidence, then we say to you that under such circumstances, notice to the agent of the

defendants of the erection of the shed, or of the refusal of the Kent County Company to continue their insurance, was in law notice to the defendants; and that payments of premiums of insurance to the agent of the defendants for the years 1864 and 1865, was in law payment to the defendants, and that that they are bound by such notice and payment.

Gentlemen, I wish it distinctly understood that you are not bound to believe or consider any fact or facts, as stated by me, if erroneous; for I say to you emphatically that you are the sole and exclusive judges of the facts. But I say to you with equal emphasis that you are bound by the law, as announced to you by the Court, for the charge of the Court on the law applicable to the case, is the evidence to you of what the law really is.

And now, gentlemen, if in view of the evidence considered in connection with the law, you shall not be satisfied that the plaintiff is entitled to recover, your verdict should be for the defendants But if, on the other hand, you shall be of opinion that the plaintiff is entitled to recover, then the only remaining question will be as to the amount of your verdict. You are aware, as well from the evidence, as from the admissions of the counsel, that there was a partial loss under the policy in the month of December 1863, which was adjusted and paid by the defendants in conjunction with the Kent County Company, each company paying a moiety of the loss. The amount paid by the defendants was the sum of $523.69. It is proper to remind you just here, that the plaintiff's cause of action is the same policy of insurance which was issued to him on the 28th of October 1863, and on which the partial loss was paid. By that contract of insurance the defendants agreed to indemnify the plaintiff for all losses or damages which should or might happen to the insured property, by reason or means of fire, during the time the policy should remain in force, " not exceeding in the whole the sum of twelve hundred dollars." Such are the terms of the contract. You see,

therefore, that the sum of twelve hundred dollars is expressly declared to be the whole extent of the defendants' liability under the policy for all losses which should occur during its continuance. They have already paid under the policy, the sum of five hundred and twenty-three dollars and sixty-nine cents for the partial loss of December 1863 ; and, therefore, they can only be held answerable in this action for the difference between that sum, and the sum of twelve hundred dollars. If you find for the plaintiff, your verdict should, therefore, be for the sum of $676.31 with interest on the same from the time when that sum should have been paid. *Curry v. The Commonwealth Insurance Company* 10 *Pick.* 535. *Tull v. The Roxbury Mutual Fire Insurance Co.* 3 *Cushing* 264.